## MICHIGAN *v.* JACKSON

No. 84–1531.   Argued December 9, 1985—Decided April 1, 1986*

STEVENS, J., delivered the opinion of the Court in which BRENNAN, WHITE, MARSHALL, and BLACKMUN, JJ., joined.   BURGER, C. J., filed an opinion concurring in the judgment, *post*, p. 636.   REHNQUIST, J., filed a dissenting opinion, in which POWELL and O'CONNOR, JJ., joined, *post*, p. 637.

*Brian E. Thiede* argued the cause for petitioner in both cases and filed a brief for petitioner in No. 84–1539.   *John D.*

---

*Together with No. 84–1539, *Michigan* v. *Bladel*, also on certiorari to the same court.

*O'Hair, Timothy A. Baughman,* and *A. George Best II* filed a brief for petitioner in No. 84–1531.

*James Krogsrud,* by appointment of the Court, 473 U. S. 903, argued the cause for respondent in No. 84–1531. With him on the brief was *James R. Neuhard. Ronald J. Bretz,* by appointment of the Court, 473 U. S. 903, argued the cause and filed a brief for respondent in No. 84–1539.

JUSTICE STEVENS delivered the opinion of the Court.

In *Edwards* v. *Arizona,* 451 U. S. 477 (1981), we held that an accused person in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.,* at 484–485. In *Solem* v. *Stumes,* 465 U. S. 638 (1984), we reiterated that *"Edwards* established a bright-line rule to safeguard pre-existing rights," *id.,* at 646: "once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him." *Id.,* at 641.

The question presented by these two cases is whether the same rule applies to a defendant who has been formally charged with a crime and who has requested appointment of counsel at his arraignment. In both cases, the Michigan Supreme Court held that postarraignment confessions were improperly obtained—and the Sixth Amendment violated—because the defendants had "requested counsel during their arraignments, but were not afforded an opportunity to consult with counsel before the police initiated further interrogations." 421 Mich. 39, 67–68, 365 N. W. 2d 56, 69 (1984). We agree with that holding.

I

The relevant facts may be briefly stated. Respondent Bladel was convicted of the murder of three railroad employees at the Amtrak Station in Jackson, Michigan, on Decem-

ber 31, 1978. Bladel, a disgruntled former employee, was arrested on January 1, 1979, and, after being questioned on two occasions, was released on January 3. He was arrested again on March 22, 1979, and agreed to talk to the police that evening without counsel. On the following morning, Friday, March 23, 1979, Bladel was arraigned. He requested that counsel be appointed for him because he was indigent. The detective in charge of the Bladel investigation was present at the arraignment. A notice of appointment was promptly mailed to a law firm, but the law firm did not receive it until Tuesday, March 27. In the interim, on March 26, 1979, two police officers interviewed Bladel in the county jail and obtained a confession from him. Prior to that questioning, the officers properly advised Bladel of his *Miranda* rights.[1] Although he had inquired about his representation several times since the arraignment, Bladel was not told that a law firm had been appointed to represent him.

The trial court overruled Bladel's objection to the admissibility of all four statements. On appeal from his conviction and sentence, Bladel challenged only the postarraignment confession. The Michigan Court of Appeals first rejected that challenge and affirmed the conviction, 106 Mich. App. 397, 308 N. W. 2d 230 (1981), but, after reconsideration in the light of a recent decision by the State Supreme Court, it reversed and remanded for a new trial. 118 Mich. App. 498, 325 N. W. 2d 421 (1982). The Michigan Supreme Court then granted the prosecutor's application for leave to appeal and considered the case with respondent Jackson's appeal of his conviction. 421 Mich. 39, 365 N. W. 2d 56 (1984).

---

[1] See *Miranda* v. *Arizona,* 384 U. S. 436 (1966). The *Miranda* warnings were also given prior to the questioning on January 1, January 2, and March 22. Although Bladel made certain inculpatory statements on those occasions, he denied responsibility for the murder until after the arraignment. As the Michigan Supreme Court noted, even without his own statements, the evidence against Bladel was substantial. 421 Mich., at 44, and n. 2, 365 N. W. 2d, at 58–59, and n. 2.

Respondent Jackson was convicted of second-degree murder and conspiracy to commit second-degree murder. He was one of four participants in a wife's plan to have her husband killed on July 12, 1979. Arrested on an unrelated charge on July 30, 1979, he made a series of six statements in response to police questioning prior to his arraignment at 4:30 p.m. on August 1. During the arraignment, Jackson requested that counsel be appointed for him. The police involved in his investigation were present at the arraignment. On the following morning, before he had an opportunity to consult with counsel, two police officers obtained another statement from Jackson to "confirm" that he was the person who had shot the victim. As was true of the six prearraignment statements, the questioning was preceded by advice of his *Miranda* rights and Jackson's agreement to proceed without counsel being present.

The Michigan Court of Appeals held that the seventh statement was properly received in evidence. 114 Mich. App. 649, 319 N. W. 2d 613 (1982). It distinguished *Edwards* on the ground that Jackson's request for an attorney had been made at his arraignment whereas Edwards' request had been made during a custodial interrogation by the police. Accordingly, it affirmed Jackson's conviction of murder, although it set aside the conspiracy conviction on unrelated grounds.

The Michigan Supreme Court held that the postarraignment statements in both cases should have been suppressed. Noting that the Sixth Amendment right to counsel attached at the time of the arraignments, the court concluded that the *Edwards* rule "applies by analogy to those situations where an accused requests counsel before the arraigning magistrate. Once this request occurs, the police may not conduct further interrogations until counsel has been made available to the accused, unless the accused initiates further communications, exchanges, or conversations with the police. . . . The police cannot simply ignore a defendant's unequivocal request for counsel." 421 Mich., at 66–67, 365 N. W. 2d, at 68–69

(footnote omitted). We granted certiorari, 471 U. S. 1124 (1985), and we now affirm.[2]

## II

The question is not whether respondents had a right to counsel at their postarraignment, custodial interrogations. The existence of that right is clear. It has two sources. The Fifth Amendment protection against compelled self-incrimination provides the right to counsel at custodial interrogations. *Edwards*, 451 U. S., at 482; *Miranda* v. *Arizona*, 384 U. S. 436, 470 (1966). The Sixth Amendment guarantee of the assistance of counsel also provides the right to counsel at postarraignment interrogations. The arraignment signals "the initiation of adversary judicial proceedings" and thus the attachment of the Sixth Amendment, *United States* v. *Gouveia*, 467 U. S. 180, 187, 188 (1984);[3] there-

---

[2] Respondent Jackson points out that the Michigan Supreme Court also held that his fourth, fifth, and sixth statements should have been suppressed on grounds of prearraignment delay under a state statute. He therefore argues that the decision rests on an adequate and independent state ground and that the writ of certiorari should be dismissed. The state-court opinion, however, does not apply that prearraignment-delay holding to the seventh statement. Thus, although the Michigan court's holding on the other statements does mean that Jackson's conviction must be reversed regardless of this Court's decision, the admissibility of the seventh statement is controlled by that court's Sixth Amendment analysis, and is properly before us.

[3] In *Jackson*, the State concedes that the arraignment represented the initiation of formal legal proceedings, and that the Sixth Amendment attached at that point. Brief for Petitioner in No. 84–1531, p. 10. In *Bladel*, however, the State disputes that contention, Brief for Petitioner in No. 84–1539, pp. 24–26. In view of the clear language in our decisions about the significance of arraignment, the State's argument is untenable. See, *e. g.*, *Brewer* v. *Williams*, 430 U. S. 387, 398 (1977) ("[A] person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him—'whether by way of formal charge, preliminary hearing, indictment, information, *or arraignment*'") (emphasis added), quoting *Kirby* v. *Illinois*, 406 U. S. 682, 689 (1972) (plurality opinion). See also *United States* v. *Gouveia*, 467 U. S., at 187–188 (quoting

after, government efforts to elicit information from the accused, including interrogation, represent "critical stages" at which the Sixth Amendment applies. *Maine* v. *Moulton*, 474 U. S. 159 (1985); *United States* v. *Henry*, 447 U. S. 264 (1980); *Brewer* v. *Williams*, 430 U. S. 387 (1977); *Massiah* v. *United States*, 377 U. S. 201 (1964). The question in these cases is whether respondents validly waived their right to counsel at the postarraignment custodial interrogations.

In *Edwards*, the request for counsel was made to the police during custodial interrogation, and the basis for the Court's holding was the Fifth Amendment privilege against compelled self-incrimination. The Court noted the relevance of various Sixth Amendment precedents, 451 U. S., at 484, n. 8, but found it unnecessary to rely on the possible applicability of the Sixth Amendment. *Id.*, at 480, n. 7. In these cases, the request for counsel was made to a judge during arraignment, and the basis for the Michigan Supreme Court opinion was the Sixth Amendment's guarantee of the assistance of counsel.[4] The State argues that the *Edwards* rule should not apply to these circumstances because there are legal differences in the basis for the claims; because there are

---

*Kirby*); *Estelle* v. *Smith*, 451 U. S. 454, 469–470 (1981) (quoting *Kirby*); *Moore* v. *Illinois*, 434 U. S. 220, 226 (1977) (quoting *Kirby*). Cf. *Powell* v. *Alabama*, 287 U. S. 45, 57 (1932) ("[T]he most critical period of the proceedings against these defendants" was *"from the time of their arraignment* until the beginning of their trial") (emphasis added). The question whether arraignment signals the initiation of adversary judicial proceedings, moreover, is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel, absent a valid waiver. Cf. *Hamilton* v. *Alabama*, 368 U. S. 52 (1961) (Alabama arraignment is a "critical stage").

[4] The Michigan Supreme Court found that "defendants' request to the arraigning magistrate for appointment of counsel implicated only their Sixth Amendment right to counsel," 421 Mich., at 52, 365 N. W. 2d, at 62, because the request was not made during custodial interrogation. It was for that reason that the Michigan court did not rely on a Fifth Amendment *Edwards* analysis. We express no comment on the validity of the Michigan court's Fifth Amendment analysis.

factual differences in the contexts of the claims; and because respondents signed valid waivers of their right to counsel at the postarraignment custodial interrogations. We consider these contentions in turn.

The State contends that differences in the legal principles underlying the Fifth and Sixth Amendments compel the conclusion that the *Edwards* rule should not apply to a Sixth Amendment claim. *Edwards* flows from the Fifth Amendment's right to counsel at custodial interrogations, the State argues; its relevance to the Sixth Amendment's provision of the assistance of counsel is far less clear, and thus the *Edwards* principle for assessing waivers is unnecessary and inappropriate.

In our opinion, however, the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before. The State's argument misapprehends the nature of the pretrial protections afforded by the Sixth Amendment. In *United States* v. *Gouveia,* we explained the significance of the formal accusation, and the corresponding attachment of the Sixth Amendment right to counsel:

> "[G]iven the plain language of the Amendment and its purpose of protecting the unaided layman at critical confrontations with his adversary, our conclusion that the right to counsel attaches at the initiation of adversary judicial criminal proceedings 'is far from a mere formalism.' *Kirby* v. *Illinois,* 406 U. S., at 689. It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'" 467 U. S., at 189.

As a result, the "Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Maine* v. *Moulton,* 474 U. S., at 176. Thus, the Sixth Amendment right to counsel at a postarraignment interrogation requires at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation.

Indeed, after a formal accusation has been made—and a person who had previously been just a "suspect" has become an "accused" within the meaning of the Sixth Amendment— the constitutional right to the assistance of counsel is of such importance that the police may no longer employ techniques for eliciting information from an uncounseled defendant that might have been entirely proper at an earlier stage of their investigation. Thus, the surreptitious employment of a cellmate, see *United States* v. *Henry,* 447 U. S. 264 (1980), or the electronic surveillance of conversations with third parties, see *Maine* v. *Moulton, supra; Massiah* v. *United States,* 377 U. S. 201 (1964), may violate the defendant's Sixth Amendment right to counsel even though the same methods of investigation might have been permissible before arraignment or indictment.[5] Far from undermining the *Edwards* rule, the difference between the legal basis for the rule applied in *Edwards* and the Sixth Amendment claim asserted in these cases actually provides additional support for the application of the rule in these circumstances.

The State also relies on the factual differences between a request for counsel during custodial interrogation and a request for counsel at an arraignment. The State maintains that respondents may not have actually intended their re-

---

[5] Similarly, after the initiation of adversary judicial proceedings, the Sixth Amendment provides a right to counsel at a "critical stage" even when there is no interrogation and no Fifth Amendment applicability. See *United States* v. *Wade,* 388 U. S. 218 (1967) (Sixth Amendment provides right to counsel at postindictment lineup even though Fifth Amendment is not implicated).

quest for counsel to encompass representation during any further questioning by the police. This argument, however, must be considered against the backdrop of our standard for assessing waivers of constitutional rights. Almost a half century ago, in *Johnson* v. *Zerbst,* 304 U. S. 458 (1938), a case involving an alleged waiver of a defendant's Sixth Amendment right to counsel, the Court explained that we should "indulge every reasonable presumption against waiver of fundamental constitutional rights." *Id.,* at 464. For that reason, it is the State that has the burden of establishing a valid waiver. *Brewer* v. *Williams,* 430 U. S., at 404. Doubts must be resolved in favor of protecting the constitutional claim. This settled approach to questions of waiver requires us to give a broad, rather than a narrow, interpretation to a defendant's request for counsel—we presume that the defendant requests the lawyer's services at every critical stage of the prosecution.[6] We thus reject the State's suggestion that respondents' requests for the appointment of counsel should be construed to apply only to representation in formal legal proceedings.[7]

---

[6] In construing respondents' request for counsel, we do not, of course, suggest that the right to counsel turns on such a request. See *Brewer* v. *Williams,* 430 U. S., at 404 ("[T]he right to counsel does not depend upon a request by the defendant"); *Carnley* v. *Cochran,* 369 U. S. 506, 513 (1962) ("[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request"). Rather, we construe the defendant's request for counsel as an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation.

[7] We also agree with the comments of the Michigan Supreme Court about the nature of an accused's request for counsel:

"Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a

The State points to another factual difference: the police may not know of the defendant's request for attorney at the arraignment. That claimed distinction is similarly unavailing. In the cases at bar, in which the officers in charge of the investigations of respondents were present at the arraignments, the argument is particularly unconvincing. More generally, however, Sixth Amendment principles require that we impute the State's knowledge from one state actor to another. For the Sixth Amendment concerns the confrontation between the State and the individual.[8] One set of state actors (the police) may not claim ignorance of defendants' unequivocal request for counsel to another state actor (the court).

The State also argues that, because of these factual differences, the application of *Edwards* in a Sixth Amendment context will generate confusion. However, we have frequently emphasized that one of the characteristics of *Edwards* is its clear, "bright-line" quality. See, *e. g.*, *Smith* v. *Illinois*, 469 U. S. 91, 98 (1984); *Solem* v. *Stumes*, 465 U. S., at 646; *Oregon* v. *Bradshaw*, 462 U. S. 1039, 1044 (1983) (plurality opinion); *id.*, at 1054, n. 2 (MARSHALL, J., dissenting). We do not agree that applying the rule when the accused requests counsel at an arraignment, rather than in the police station, somehow diminishes that clarity. To the extent that there may have been any doubts about interpreting a request

---

police officer for an attorney, but permit further interrogation to a defendant who makes an identical request to a judge. The simple fact that defendant has requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly." 421 Mich., at 63–64, 365 N. W. 2d, at 67.

[8] See, *e. g.*, *Maine* v. *Moulton*, 474 U. S. 159, 170–171 (1985):

"Once the right to counsel has attached and been asserted, *the State* must of course honor it. This means more than simply that *the State* cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on *the State* an affirmative obligation to respect and preserve the accused's choice to seek this assistance" (emphasis added) (footnote omitted).

for counsel at an arraignment, or about the police responsibility to know of and respond to such a request, our opinion today resolves them.

Finally, the State maintains that each of the respondents made a valid waiver of his Sixth Amendment rights by signing a postarraignment confession after again being advised of his constitutional rights. In *Edwards*, however, we rejected the notion that, after a suspect's request for counsel, advice of rights and acquiescence in police-initiated questioning could establish a valid waiver. 451 U. S., at 484. We find no warrant for a different view under a Sixth Amendment analysis. Indeed, our rejection of the comparable argument in *Edwards* was based, in part, on our review of earlier Sixth Amendment cases.[9] Just as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis.[10]

---

[9] After stating our holding that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights," 451 U. S., at 484, we appended this footnote:

"In *Brewer* v. *Williams*, 430 U. S. 387 (1977), where, as in *Massiah* v. *United States*, 377 U. S. 201 (1964), the Sixth Amendment right to counsel had accrued, the Court held that a valid waiver of counsel rights should not be inferred from the mere response by the accused to overt or more subtle forms of interrogation or other efforts to elicit incriminating information. In *Massiah* and *Brewer*, counsel had been engaged or appointed and the admissions in question were elicited in his absence. But in *McLeod* v. *Ohio*, 381 U. S. 356 (1965), we summarily reversed a decision that the police could elicit information after indictment even though counsel had not yet been appointed." *Id.*, at 484, n. 8.

[10] The State also argues that the Michigan Supreme Court's finding of a valid Fifth Amendment waiver should require the finding of a valid Sixth Amendment waiver. The relationship between the validity of waivers for Fifth and Sixth Amendment purposes has been the subject of considerable attention in the courts, 421 Mich., at 55–62, 365 N. W. 2d, at 63–67 (discussing and collecting cases), and the commentaries, *id.*, at 54, n. 15, 365

## III

*Edwards* is grounded in the understanding that "the assertion of the right to counsel [is] a significant event," 451 U. S., at 485, and that "additional safeguards are necessary when the accused asks for counsel." *Id.*, at 484. We conclude that the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.

Although the *Edwards* decision itself rested on the Fifth Amendment and concerned a request for counsel made during custodial interrogation, the Michigan Supreme Court correctly perceived that the reasoning of that case applies with even greater force to these cases. The judgments are accordingly affirmed.

*It is so ordered.*

CHIEF JUSTICE BURGER, concurring in the judgment.

I concurred only in the judgment in *Edwards* v. *Arizona*, 451 U. S. 477, 487–488 (1981), and in doing so I observed:

"The extraordinary protections afforded a person in custody suspected of criminal conduct are not without a valid basis, but as with all 'good' things they can be carried too far."

The urge for "bright-line" rules readily applicable to a host of varying situations would likely relieve this Court some-

---

N. W. 2d, at 63, n. 15. In view of our holding that the *Edwards* rule applies to the Sixth Amendment and that the Sixth Amendment requires the suppression of the postarraignment statements, we need not decide either the validity of the Fifth Amendment waiver in this case, see n. 4, *supra*, or the general relationship between Fifth and Sixth Amendment waivers.

what from more than a doubling of the Court's work in recent decades, but this urge seems to be leading the Court to an absolutist, mechanical treatment of the subject. At times, it seems, the judicial mind is in conflict with what behavioral—and theological—specialists have long recognized as a natural human urge of people to confess wrongdoing. See, *e. g.*, T. Reik, The Compulsion to Confess (1959).

We must, of course, protect persons in custody from coercion, but step by step we have carried this concept well beyond sound, common-sense boundaries. The Court's treatment of this subject is an example of the infirmity of trying to perform the rulemaking function on a case-by-case basis, ignoring the reality that the criminal cases coming to this Court, far from typical, are the "hard" cases. This invokes the ancient axiom that hard cases can make bad law.

*Stare decisis* calls for my following the rule of *Edwards* in this context, but plainly the subject calls for reexamination. Increasingly, to borrow from Justice Cardozo, more and more "criminal[s] . . . go free because the constable has blundered." *People* v. *Defore*, 242 N. Y. 13, 21, 150 N. E. 585, 587 (1926).

JUSTICE REHNQUIST, with whom JUSTICE POWELL and JUSTICE O'CONNOR join, dissenting.

The Court's decision today rests on the following deceptively simple line of reasoning: *Edwards* v. *Arizona*, 451 U. S. 477 (1981), created a bright-line rule to protect a defendant's Fifth Amendment rights; Sixth Amendment rights are even more important than Fifth Amendment rights; therefore, we must also apply the *Edwards* rule to the Sixth Amendment. The Court prefers this neat syllogism to an effort to discuss or answer the only relevant question: Does the *Edwards* rule make sense in the context of the Sixth Amendment? I think it does not, and I therefore dissent from the Court's unjustified extension of the *Edwards* rule to the Sixth Amendment.

My disagreement with the Court stems from our differing understandings of *Edwards*. In *Edwards*, this Court held that once a defendant has invoked his right under *Miranda* v. *Arizona*, 384 U. S. 436 (1966), to have counsel present during custodial interrogation, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." 451 U. S., at 484. This "prophylactic rule," see *Solem* v. *Stumes*, 465 U. S. 638, 644, 645 (1984), was deemed necessary to prevent the police from effectively "overriding" a defendant's assertion of his *Miranda* rights by "badgering" him into waiving those rights. See *Oregon* v. *Bradshaw*, 462 U. S. 1039, 1044 (1983) (plurality opinion of REHNQUIST, J.) (*Edwards* rule "designed to protect an accused in police custody from being badgered by police officers").[1] In short, as we explained in later cases, "*Edwards* did not confer a substantive constitutional right that had not existed before; it 'created a protective umbrella serving to enhance a constitutional guarantee.'" *Solem* v. *Stumes*, *supra*, at 644, n. 4, quoting *Michigan* v. *Payne*, 412 U. S. 47, 54 (1973); see also *Shea* v. *Louisiana*, 470 U. S. 51, 61 (1985) (WHITE, J., dissenting) (describing "prophylactic purpose" of *Edwards* rule).

What the Court today either forgets or chooses to ignore is that the "constitutional guarantee" referred to in *Solem* v. *Stumes* is the Fifth Amendment's prohibition on compelled self-incrimination. This prohibition, of course, is also the constitutional underpinning for the set of prophylactic rules announced in *Miranda* itself. See *Moran* v. *Burbine*, *ante*, at 424–425; *Oregon* v. *Elstad*, 470 U. S. 298, 304–305, 306,

---

[1] The four dissenters in *Oregon* v. *Bradshaw* apparently agreed with the plurality's characterization of the *Edwards* rule. See 462 U. S., at 1055, n. 2 (MARSHALL, J., joined by BRENNAN, BLACKMUN, and STEVENS, JJ., dissenting) (citing passage from plurality opinion quoted in the text, and noting that "[t]he only dispute between the plurality and the dissent in this case concerns the meaning of 'initiation' for purposes of *Edwards*' *per se* rule").

and n. 1 (1985).[2]  *Edwards,* like *Miranda,* imposes on the police a bright-line standard of conduct intended to help ensure that confessions obtained through custodial interrogation will not be "coerced" or "involuntary."  Seen in this proper light, *Edwards* provides nothing more than a second layer of protection, in addition to those rights conferred by *Miranda,* for a defendant who might otherwise be compelled by the police to incriminate himself in violation of the Fifth Amendment.

The dispositive question in the instant cases, and the question the Court should address in its opinion, is whether the same kind of prophylactic rule is needed to protect a defendant's right to counsel under the Sixth Amendment.  The answer to this question, it seems to me, is clearly "no."  The Court does not even suggest that the police commonly deny defendants their Sixth Amendment right to counsel.  Nor, I suspect, would such a claim likely be borne out by empirical evidence.  Thus, the justification for the prophylactic rules this Court created in *Miranda* and *Edwards,* namely, the perceived widespread problem that the police were violating, and would probably continue to violate, the Fifth Amendment rights of defendants during the course of custodial interrogations, see *Miranda, supra,* at 445–458,[3] is conspicu-

---

[2] The Court suggests, in dictum, that the Fifth Amendment also provides defendants with a "right to counsel."  See *ante,* at 629.  But our cases make clear that the Fifth Amendment itself provides no such "right." See *Moran* v. *Burbine, ante,* at 423, n. 1; *Oregon* v. *Elstad,* 470 U. S., at 304–305.  Instead, *Miranda* confers upon a defendant a "right to counsel," *but only when such counsel is requested during custodial interrogations.* Even under *Miranda,* the "right to counsel" exists solely as a means of protecting the defendant's Fifth Amendment right not to be compelled to incriminate himself.

[3] In *Miranda,* this Court reviewed numerous instances in which police brutality had been used to coerce a defendant into confessing his guilt. The Court then stated:

"The use of physical brutality and violence is not, unfortunately, relegated to the past or to any part of the country. . . .

"The examples given above are undoubtedly the exception now, but they are sufficiently widespread to be the object of concern.  Unless a proper

ously absent in the Sixth Amendment context. To put it simply, the prophylactic rule set forth in *Edwards* makes no sense at all except when linked to the Fifth Amendment's prohibition against compelled self-incrimination.

Not only does the Court today cut the *Edwards* rule loose from its analytical moorings, it does so in a manner that graphically reveals the illogic of the Court's position. The Court phrases the question presented in these cases as whether the *Edwards* rule applies "to a defendant who has been formally charged with a crime *and who has requested appointment of counsel at his arraignment.*" *Ante*, at 626 (emphasis added). And the Court ultimately limits its holding to those situations where the police "initiate interrogation *after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel.*" *Ante*, at 636 (emphasis added).

In other words, the Court most assuredly does *not* hold that the *Edwards per se* rule prohibiting all police-initiated interrogations applies from the moment the defendant's Sixth Amendment right to counsel attaches, with or without a request for counsel by the defendant. Such a holding would represent, after all, a shockingly dramatic restructuring of the balance this Court has traditionally struck between the rights of the defendant and those of the larger society. Applying the *Edwards* rule to situations in which a defendant has not made an explicit request for counsel would also render completely nugatory the extensive discussion of "waiver" in such prior Sixth Amendment cases as *Brewer* v. *Williams*, 430 U. S. 387, 401–406 (1977). See also *id.*, at 410 (POWELL, J., concurring) ("The critical factual issue is whether there had been a voluntary waiver"); *id.*, at 417 (BURGER, C. J., dissenting) ("[I]t is very clear that Williams had made a valid

---

limitation upon custodial interrogation is achieved . . . there can be no assurance that practices of this nature will be eradicated in the foreseeable future." 384 U. S., at 446–447.

waiver of his . . . Sixth Amendment right to counsel); *id.*, at 430, n. 1 (WHITE, J., joined by BLACKMUN and REHN-QUIST, JJ., dissenting) ("It does not matter whether the right not to make statements in the absence of counsel stems from *Massiah* v. *United States*, 377 U. S. 201 (1964), or *Miranda* v. *Arizona*, 384 U. S. 436 (1966). In either case the question is one of waiver").[4]

This leaves the Court, however, in an analytical strait-jacket. The problem with the limitation the Court places on the Sixth Amendment version of the *Edwards* rule is that, unlike a defendant's "right to counsel" under *Miranda*, which does not arise until affirmatively invoked by the defendant during custodial interrogation, a defendant's Sixth Amendment right to counsel does not depend at all on whether the defendant has requested counsel. See *Brewer* v. *Williams*, *supra*, at 404; *Carnley* v. *Cochran*, 369 U. S. 506, 513 (1962). The Court acknowledges as much in footnote six of its opinion, where it stresses that "we do not, of course, suggest that

---

[4] See also *Moran* v. *Burbine*, *ante*, at 428 ("It is clear, of course, that, *absent a valid waiver*, the defendant has the right to the presence of an attorney during any interrogation occurring after the first formal charging proceeding, the point at which the Sixth Amendment right to counsel initially attaches").

Several of our Sixth Amendment cases have indeed erected virtually *per se* barriers against certain kinds of police conduct. See, *e. g.*, *Maine* v. *Moulton*, 474 U. S. 159 (1985); *United States* v. *Henry*, 447 U. S. 264 (1980); *Massiah* v. *United States*, 377 U. S. 201 (1964). These cases, however, all share one fundamental characteristic that separates them from the instant cases; in each case, the nature of the police conduct was such that it would have been impossible to find a valid waiver of the defendant's Sixth Amendment right to counsel. See *Maine* v. *Moulton*, *supra*, at 176–177 (undisclosed electronic surveillance of conversations with a third party); *United States* v. *Henry*, *supra*, at 265, 273 (use of undisclosed police informant); *Massiah* v. *United States*, *supra*, at 202 (undisclosed electronic surveillance). Here, on the other hand, the conduct of the police was totally open and aboveboard, and could not be said to prevent the defendant from executing a valid Sixth Amendment waiver under the standards set forth in *Johnson* v. *Zerbst*, 304 U. S. 458 (1938).

the right to counsel turns on . . . a request [for counsel]." *Ante*, at 633, n. 6.

The Court provides no satisfactory explanation for its decision to extend the *Edwards* rule to the Sixth Amendment, yet limit that rule to those defendants foresighted enough, or just plain lucky enough, to have made an explicit request for counsel which we have always understood to be completely unnecessary for Sixth Amendment purposes. The Court attempts to justify its emphasis on the otherwise legally insignificant request for counsel by stating that "we construe the defendant's request for counsel as an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation." *Ibid.* This statement sounds reasonable, but it is flatly inconsistent with the remainder of the Court's opinion, in which the Court holds that there can be no waiver of the Sixth Amendment right to counsel after a request for counsel has been made. See *ante*, at 635–636, n. 10. It is obvious that, for the Court, the defendant's request for counsel is not merely an "extremely important fact"; rather, it is the *only* fact that counts.

The truth is that there is no satisfactory explanation for the position the Court adopts in these cases. The glaring inconsistencies in the Court's opinion arise precisely because the Court lacks a coherent, analytically sound basis for its decision. The prophylactic rule of *Edwards*, designed from its inception to protect a defendant's right under the Fifth Amendment not to be compelled to incriminate himself, simply does not meaningfully apply to the Sixth Amendment. I would hold that *Edwards* has no application outside the context of the Fifth Amendment, and would therefore reverse the judgment of the court below.