STATE OF NORTH CAROLINA v. PAUL MITCHELL BURGESS

No. 529A86

(Filed 7 October 1987)

**Criminal Law § 75.12— statement by defendant after request for counsel—no prejudice**

There was no prejudicial error in a murder prosecution from the admission of a statement by defendant made after he had requested appointment of counsel and counsel had not been appointed. The statement was not inculpatory and, although it placed defendant and the victim together at or near the time of the offense, other witnesses placed defendant and the victim together on that date.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) (1986) from a judgment imposing a sentence of life imprisonment entered by *Cornelius, J.*, upon defendant's conviction of first degree murder at the 9 June 1986 Criminal Session of Superior Court, UNION County. Heard in the Supreme Court 11 September 1987.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, for defendant-appellant.*

WHICHARD, Justice.

Defendant was convicted of the first degree murder of Byron Roger Wallace and sentenced to life imprisonment. He was also convicted of robbing Wallace with a dangerous weapon, but the

trial court merged the conviction in the robbery case with that in the murder case. We find no prejudicial error.

The State's evidence, in pertinent summary, showed the following:

The dead body of the victim was found in a wooded area off Providence Road and Kermit Braswell Road in Union County on 8 June 1985. The body was lacerated and bruised, and the skull was fractured. There was bleeding under the scalp, a collection of blood under the wound of the forehead, and another collection of blood behind the right ear. Over the brain there was a collection of blood and "hemmorhage, hematoma, and . . . some contusion or bruising of the brain."

Dr. Page Hudson, chief medical examiner for the State, opined that the cause of death was blunt trauma or blunt force to the head. He estimated that the victim had been dead "two or three days or more" when he saw the body on 9 June 1985.

Paul Braswell testified that he had met the defendant on 4 June 1985. He observed defendant, the victim, and Shannon Starnes leave the residence of Ronnie Gordon together. The defendant and Starnes returned in approximately an hour and a half without the victim.

Shannon Starnes testified that he and defendant had met at Ronnie Gordon's house. He could not remember the date. Gordon had asked him if he wanted to go with defendant "and roll an old man." Defendant had asked him if he wanted to make some money, and he told defendant he did. When he went outside to defendant's car, an old man was there. He got in the car with defendant and the old man, and they traveled up Providence Road. They went to a road "right there on the left after you pass Kermit Braswell Road" and turned around. They then went on "this sort of like a logging road on the left" and defendant said, "Whoever's got to use the bathroom get out now."

The three men exited the car, and Starnes saw defendant obtain a stick from under the seat. The stick "looked like somebody had put some metal or poured metal in it" or "like somebody had poured lead in it." Defendant hit the old man in the back of the head with the stick. Starnes first heard "sort a like a slapping and a thud." He saw the man get up and put his hand in his

pocket. Defendant was standing behind the man with the stick in his hand. When the man got up, Starnes hit him in the head with his fist. The man "went back down," and defendant then kept saying "Don't get up, Pop" and kept hitting him in the head with the stick. Starnes saw defendant hit the man three to four times.

Defendant then rolled the man over and got some money out of his pocket. He reached in the other pocket and got more. He then hit the man one more time in the head with the stick. Starnes testified: "He come down real hard, real hard. He had his hand up and come down real hard."

As they left the scene defendant said to Starnes, "You know the old man's going to die." Defendant rebuffed Starnes' suggestion that they go back to check on the man. Defendant then gave Starnes one hundred and fifty dollars.

The final State's witness, Larke Plyler, a detective in the Union County Sheriff's office, testified, over objection, that defendant had made the following statement to him:

> The defendant advised me that he had been living in Arkansas and was working as a cook for about two and a half weeks. That he left Flippin, Arkansas, to come to Gastonia to pick up his income tax check and then go on to New York. He advised me he picked up Mr. Wallace in Tennessee hitchhiking. Mr. Wallace told Mitchell Burgess that he was going to Ohio to see some of his relatives. He, Mr. Wallace, showed Paul Mitchell Burgess that he had a sum of money, and bought gas and beer while enroute to North Carolina. Paul Mitchell Burgess advised me that it was on the 4th day of June, 1985, when he and Mr. Wallace got to Gastonia, North Carolina. They went to Paul Mitchell Burgess' brother's house and no one was at home. They went to Paul Mitchell Burgess' sister's house where [his], Paul Mitchell Burgess', mother was there sick. Paul Mitchell Burgess advised me that his mother told him that she had gotten his income tax checks cashed and had sent the money to New York. Paul Mitchell Burgess advised me that he and Mr. Wallace left Gastonia and came to Charlotte where he, Paul Mitchell Burgess, stopped at a service station to use the bathroom. After using the bathroom he stated that he, Paul Mitchell Burgess, went back to his car and Mr. Wallace was gone.

Paul Mitchell Burgess stated that he left the service station and headed towards New York, and spent the night in a motel on Highway 49, somewhere near the North Carolina/Virginia Line. Paul Mitchell Burgess also stated to me that he did not know how Mr. Wallace got to Union County, and that he, Paul Mitchell Burgess, did not come to Union County that night.

Defendant's grandmother testified on his behalf. She stated that on 4 June 1985 defendant had come by her house in Belmont, North Carolina, and that an old man was with him. The time was "somewhere around five o'clock in the evening," and they stayed "maybe twenty-five or thirty minutes." Defendant's other evidence was in the nature of an alibi, tending to show that he was not in the area of the offense at or about the time of the victim's death.

Defendant's sole contention is that the trial court erred in admitting, over objection, the above statement to Detective Plyler. The gravamen of his argument is that he had requested appointment of counsel, counsel had not been appointed, and any statement made under those circumstances was inadmissible as violating his Sixth Amendment right to counsel. *See Michigan v. Jackson,* 475 U.S. 625, 636, 89 L.Ed. 2d 631, 642 (1986) ("if police initiate interrogation after a defendant's assertion . . . of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid.").

We find it unnecessary to pass upon the merits of the argument. The statement was not inculpatory. Defendant argues that it was nevertheless prejudicial in that the District Attorney argued that it was damaging because it placed defendant and the victim together at or near the time of the offense. However, the State's witness Braswell also placed defendant and the victim together on that date; and while the State's witness Starnes could not recall the date, he too placed defendant and the victim together in the area where the victim's body was found. Even the testimony of defendant's grandmother, his own witness, placed defendant and a man who fit the victim's description together on the date of the offense within easy driving distance of the locale thereof.

Lawton v. Yancey Trucking Co.

In light of the foregoing evidence and of the record as a whole, assuming, *arguendo*, that the court erred in admitting defendant's statement, we hold that the error was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b); *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705 (1967).

We thus conclude that defendant had a fair trial, free from prejudicial error.

No error.