593 S.E.2d 820

The STATE, Respondent,

v.

Randy Wakefield ANDERSON, Appellant.

No. 3730.

Court of Appeals of South Carolina.

Heard Dec. 10, 2003.

Decided Feb. 2, 2004.

Rehearing Denied April 1, 2004.

Assistant Appellate Defender Robert M. Dudek, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor William Townes Jones, Greenwood, for Respondent.

HEARN, C.J.:

Randy Wakefield Anderson was convicted of murder, armed robbery, and conspiracy to commit armed robbery. He appeals, arguing the trial court erred (1) in allowing the admission of hearsay evidence and (2) in admitting statements into evidence which were taken in violation of his Sixth Amendment right to counsel. We reverse and remand.

## FACTS

Around midnight on May 10, 1998, Jamal Manick shot and killed Lamont Rappley in the parking lot of a restaurant. At trial, the State alleged that Appellant conspired with Manick and Fred Ross to rob the victim. Officer Shawn Fisher testified that upon arriving at the scene, he observed the victim lying face down on the pavement with Appellant kneeling beside him. Appellant told Officer Fisher: "My man's been shot." During this time, Kenneth Williams, a friend of the victim, arrived at the scene. Officer Fisher instructed Appellant to sit in his patrol car while he secured the scene.

After securing the scene, Officer Fisher returned to his patrol car to speak with Appellant. Anderson explained that he was walking with Williams through the restaurant's park-

ing lot when a car approached, and a passenger got out, shot the victim, jumped back in the car, and left the scene. According to Appellant, he and Williams then left the scene to call 911.

Williams, a witness for the State, testified that on the evening of May 10, 1998, the victim asked Williams to accompany him to the restaurant to conduct a drug deal. When they arrived at the restaurant, Williams "hung back" as the victim met with Anderson to conduct the deal. Williams stated that about five or ten minutes later, it began raining and he and the victim began to leave the parking lot. As they were walking away, Williams saw headlights and turned around; he then saw a man jump from the car, and shoot the victim. After the shooting, he and Anderson ran to the victim's house, which was nearby, to call 911. Williams admitted that he initially lied to the police when questioned about the circumstances surrounding the shooting because he "didn't want it to look like a drug-crime."

Fred Ross also testified for the State. According to Ross, he was hanging out in an apartment with Manick on the day of the incident. Ross claimed that Appellant arrived at the apartment and told them "that he had a lick," indicating that the men could rob the victim. Ross testified that later in the evening, he drove Manick to the restaurant where Appellant had set up a drug deal with the victim. Ross stated that as they approached the restaurant, Manick jumped out of the car and shot the victim. On cross-examination, Ross acknowledged that he had a deal with the State allowing him to plead guilty to accessory after the fact of murder and accessory after the fact of armed robbery, charges which carry maximum ten-year prison sentences, in exchange for his testimony.

Bobby Lukie, who rode with Ross and Manick to the restaurant, also testified that Manick shot the victim. Lukie maintained that he was not involved in planning the robbery and that he merely ran into Ross and Manick at a convenience store that night and decided to accompany them to the restaurant. The defense's theory of the case, however, was that it was Lukie, not Appellant, who planned the robbery of the victim.

The jury found Appellant guilty of all charges and sentenced him to thirty years for murder, twenty years concurrent for armed robbery, and five years concurrent for conspiracy to commit armed robbery. This appeal follows.

## LAW/ANALYSIS

### I. Hearsay

 Appellant argues the trial court erred in allowing Lukie to testify regarding statements allegedly made to him by Ross. Appellant asserts that this testimony constituted impermissible hearsay. We disagree.

At trial, Lukie testified that around 11:00 p.m. on the night of the murder, he drove by a convenience store and noticed Ross and Manick standing outside the store. Lukie stated that when he asked Ross and Manick what they were doing, Ross told him "they had a lick or something like that." Defense counsel objected, arguing this testimony was hearsay. The State argued the testimony was admissible as non-hearsay because the statement was made in furtherance of the conspiracy. The trial court agreed and overruled the defense's objection.

Rule 801(d)(2)(E), SCRE, provides that "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy" is not hearsay. *See also State v. Gilchrist,* 342 S.C. 369, 371, 536 S.E.2d 868, 869 (2000) (noting that Rule 801(d)(2)(E) allows for the admission of a coconspirator's statement where there is evidence of the conspiracy independent of the statement sought to be admitted). Here, there was evidence presented at trial that Ross and Manick conspired with Appellant to rob and murder the victim. The statements allegedly made to Lukie by Ross were sufficient to allow the jury to reasonably infer that the statements were made in furtherance of the conspiracy, especially in light of the fact that Lukie agreed to accompany Ross and Manick in their robbery of the victim. Accordingly, we find no error in the trial court's ruling that the statement was not hearsay.

### II. Sixth Amendment

 Appellant also argues the trial court erred in refusing to suppress a statement he made to police on June 16, 1998

because it was taken in violation of his Sixth Amendment right to counsel. We agree.

At trial, a *Jackson v. Denno*[1] hearing was held to determine the admissibility of statements Appellant made to police. Officer Fisher testified that, immediately following the shooting, Appellant agreed to accompany him to the police station, and a gunshot residue test was performed on Appellant. Officer Raczinsky went to Appellant's home on June 15, 1998 to discuss the positive results of the gunshot residue test. After this discussion, Appellant accompanied Raczinsky to the police station, and following a brief interview, he was arrested for murdering the victim. Raczinsky read *Miranda* warnings to Anderson and escorted him to jail.

At 11:30 the next morning, Appellant was arraigned for the murder, and he signed a form requesting the services of a public defender. Later that afternoon, Anderson's aunt visited with him at the police station. Raczinsky testified that after the visit, the aunt "suggested I go talk to [Anderson] again." Raczinsky testified that he then went in to talk with Anderson, read to him his *Miranda* warnings, and asked if "anything had changed since the last time [they] talked." Appellant then told Raczinsky that "he was at [the restaurant] in reference to a drug transaction." Appellant explained that he met the victim earlier in the day and had arranged to purchase crack cocaine from him around midnight. Defense counsel objected to the admission of this statement, arguing it was initiated by the police and was made after Appellant had invoked his Sixth Amendment right to counsel.

■ The Sixth Amendment guarantees that in all criminal prosecutions "the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "[O]nce a criminal defendant invokes his Sixth Amendment right to counsel, a subsequent waiver of that right—even if voluntary, knowing, and intelligent under traditional standards—is presumed invalid if secured pursuant to police-initiated conversation," and "statements obtained in violation of that rule may not be admitted as substantive evidence in the prosecution's case in chief." *Michigan v. Harvey*, 494

1. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

U.S. 344, 345, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) (stating the holding of *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). Likewise, the South Carolina Supreme Court has held:

> When the Sixth Amendment right to counsel has attached, if police initiate interrogation after a defendant's assertion, at an arraignment or other similar proceedings, of his right to counsel, any waiver of the defendant's right to counsel for that police initiated interrogation is invalid unless the defendant initiates the contact himself.

*State v. Council,* 335 S.C. 1, 15–16, 515 S.E.2d 508, 515 (1999).

Here, in ruling that Appellant's statement was admissible, the trial court first found that Officer Raczinsky "was not restrained in his questioning of [Appellant] by the existence of the document [requesting the services of a public defender] . . . because it was signed at a time different from and a place different from [where Appellant was questioned]." However, this very issue was considered by the United States Supreme Court in *Michigan v. Jackson,* 475 U.S. 625, 634, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) and was resolved in favor of the defendant because "Sixth Amendment principles require that we impute the State's knowledge from one state actor to another." Thus, the police (one state actor) may not claim to be ignorant of Appellant's request for counsel at his arraignment before the court (another state actor). *Id.*

As additional support for admitting Appellant's statement into evidence, the trial court found that Appellant's signing of the paperwork for a public defender was not enough to invoke his right to counsel. However, pursuant to *State v. Council,* 335 S.C. 1, 15–16, 515 S.E.2d 508, 515 (1999), we believe signing the paperwork requesting a public defender did invoke Appellant's Sixth Amendment right to counsel.

In *Council,* the defendant was arraigned on October 14, 1992, and requested the court appoint an attorney to represent him. *Id.* at 14, 515 S.E.2d at 514. An attorney was appointed to represent the defendant on October 16, 1992, and the defendant made inculpatory statements to the police on October 19, 1992. *Id.* In discussing the defendant's claim that the October 19th statements were obtained in violation of his Sixth Amendment right to counsel, the court found as follows:

"Appellant's Sixth Amendment right to counsel attached on October 14, 1992, when he was arraigned. Further, appellant asserted his right to counsel on October 14, 1992, when he requested appointment of counsel." *Id.* As in *Council*, we find that Anderson's Sixth Amendment right to counsel attached at the time of his arraignment, and he invoked that right by requesting a public defender at 11:30 a.m. on June 16, 1998.

Accordingly, we find that Officer Raczinsky's contact with Appellant violated the protections afforded Appellant under the Sixth Amendment. Even if the police re-entered the room at the behest of Appellant's aunt, Officer Raczinsky admitted that he initiated the conversation with Appellant by asking him if "anything had changed" since the last time the two had spoken. Thus, the trial court erred in admitting Appellant's statement about the "drug deal" because it was made after Appellant had invoked his Sixth Amendment right to counsel and was pursuant to a conversation he did not initiate. Therefore, Appellant's convictions are reversed and the case is remanded for a new trial.

**REVERSED and REMANDED.**

HOWARD and KITTREDGE, JJ., concur.