# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-KA-00395-SCT

*MONIQUE LOTT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/12/2022 |
| TRIAL JUDGE: | HON. GEORGE M. MITCHELL, JR. |
| TRIAL COURT ATTORNEYS: | CHADWICK DALE MONTGOMERY |
| | ROSALIND HAYDEN JORDAN |
| | WILLIAM ADAM HOPPER |
| | BRADLEY DAVID DAIGNEAULT |
| | PAYNE CHRISTIAN HORAN |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | WILLIAM ADAM HOPPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/29/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.    Monique Lott was convicted of second-degree murder for the killing of Willie "Red"

Hooper.  On appeal, she contends that the trial court erred by admitting a statement she gave

to police following her arrest but prior to her indictment because of her alleged uncertainty

about whether the attorney who had been appointed for her preliminary hearing still represented her.

¶2. It is uncontested that Lott initiated the meeting with police; she executed a written request for the officer to visit her in jail. Lott also executed a written *Miranda*[1] waiver before giving the statement, and the entire interview was recorded. Applying the relevant authorities, we conclude that the trial court did not err by finding that Lott voluntarily waived her rights.

## FACTS

¶3. Around five o'clock in the morning on November 25, 2018, residents of Mississippi Street in Grenada reported hearing many gunshots. Witnesses saw a tall, slender man firing shots, and it sounded like more than one person was shooting.

¶4. At a nearby intersection, Deputy Joey Ward stopped a vehicle that he later learned matched the description of one of the vehicles leaving the scene after the shooting. The vehicle's driver, Lashonda McNeel, told Deputy Ward she lived on Mississippi Street and had decided to go stay with her mother after hearing gunshots. Deputy Ward then spoke to other residents of Mississippi Street, who told him that the shooting had happened in front of McNeel's home and that several people, including the tall man seen shooting, had been seen going into and coming out of the house before leaving the scene. At McNeel's house, Deputy Ward found shell casings and projectile fragments in the driveway near the carport.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶5.    Deputy Ward later spoke to McNeel again, at her mother's house, where McNeel repeated her story; but she also told Deputy Ward that she had had some "issues" with Hooper, the father of her child, two weeks before.

¶6.    Working from these leads, investigators came to believe Willie Hooper—the father of McNeel's children—had been shot and killed at her house. Hooper's body was found in a well on property belonging to Lott's aunt, along with a fitted sheet matching McNeel's bedding. Hooper had been shot nine times.

¶7.    Subsequently implicated were Monique Lott, who had also been romantically involved with McNeel, Lott's brother Mack, and Marquize Tillman. Tillman's girlfriend later testified that Tillman had taken her vehicle, which matched the description of the second vehicle seen leaving the scene, and that he had brought it back around seven o'clock that morning with what appeared to be blood around the rear hatch. Forensics determined at least two guns had been fired at the scene, and evidence showed both Lott and Tillman had been armed that night.

¶8.    After Lott was arrested and the charges against her bound over to the grand jury, she was held in the Grenada County Jail. On January 14, 2019, Lott executed a written request to speak with a specific sheriff's deputy. Lott initially denied involvement, but she eventually told her side of the story. She claimed that, earlier on the night of Hooper's death, she and the others had encountered him at a nightclub. As they were leaving, Hooper ambushed Lott's party, firing several shots, but no one was hit. Lott admitted that she had then armed herself with a borrowed handgun, but she averred that it did not work. Lott,

Mack, and Tillman then went looking for Hooper, intending to beat him up so he would leave them alone in the future, but they could not find him. Mack then went home, but Lott and Tillman went to McNeel's house, where they unexpectedly ran into Hooper. Tillman then killed Hooper and forced Lott help him cover it up, saying he would kill her too if she refused. Lott later tried to return the borrowed gun, but its owner refused to take it back, so she threw it into the Yalobusha River.

¶9. Lott repeatedly averred that McNeel and her brother Mack had nothing to do with the killing or coverup, even though Mack fit the witnesses' description of the tall, slender shooter better than Tillman or Hooper. She maintained that she had taken cover when the shooting started and had not fired any shots.

¶10. Lott's video-recorded statement was admitted into evidence over her objection at trial, and she was convicted of second-degree murder. She now appeals, arguing the statements were not given voluntarily and should have been excluded from evidence.

## DISCUSSION

¶11. On appeal, Lott contends that her statement was rendered involuntary by her alleged confusion about whether the attorney appointed for her preliminary hearing still represented her at the time.

¶12. "When a trial court has overruled a motion to suppress the confession of a defendant, this Court will reverse the trial court's decision if the ruling was 'manifestly in error or contrary to the overwhelming weight of the evidence.'" *Taylor v. State*, 330 So. 3d 758, 762

4

(Miss. 2021) (internal quotation marks omitted) (quoting ***Benjamin v. State***, 116 So. 3d 115, 121 (Miss. 2013)).

¶13. At the outset, we point out that Lott's argument on appeal is not the principal argument she presented at trial. In her motion to suppress at trial, Lott claimed only that the interview was involuntary because, while discussing the question of whether she was represented or not, Lott had "implicitly invoked her right to counsel"; Lott thus attempted to shoehorn her motion to dismiss into the line of cases holding that an interview must be ended when a suspect asserts her right to counsel. Only in his closing arguments on the motion to suppress did Lott's attorney suggest that her alleged confusion about whether she was currently represented had rendered her statement involuntary. Now, on appeal, that is the only argument she makes.

¶14. We observe also that the entire interview was recorded, and at no point did Lott actually express *confusion* about her representation status; she said the attorney had told her he had been appointed to represent her for the preliminary hearing and that he may or may not be appointed again to represent her if she was indicted by the grand jury. This is exactly what the attorney represented to the court that he had told her. If anything, the officer interviewing Lott—who told Lott the lawyer still represented her—was the one who was confused.

¶15. In her brief on appeal, Lott asserts that the officer told her "that she had a right to an attorney and that attorney was the one that had already told her he was not her lawyer." Those two things may be true, but they are not an accurate summary of what the officer

5

actually told Lott. Instead, the officer correctly explained to Lott that she had a right to have her attorney present *or* to have one appointed for her for the interview. Thus, though he may have erroneously believed Lott was still represented by the attorney appointed for her for the preliminary hearing, the officer correctly informed Lott that regardless of whether her public defender from the preliminary hearing still represented her, she had the right to an attorney and that one would be provided if she requested it. The officer never wavered on the crucial point that Lott would get an attorney if she asked for one. Lott indicated that she understood and then executed a written waiver stating that she did not want an attorney.

¶16. The closest Lott comes to basing her argument on authorities with similar facts to her case is her reliance on Justice Stevens's dissent in *Montejo v. Louisiana*, 556 U.S. 778, 129 S. Ct. 2079, 173 L. Ed. 2d 995 (2009). *Montejo* overruled *Michigan v. Jackson*, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986), which had held that the Sixth Amendment presumptively prohibits police from initiating interrogation after the accused has claimed her right to counsel in a court proceeding. Dissenting in *Montejo*, Justice Stevens (the author of *Jackson*) observed that *Miranda* warnings—intended to protect an accused's Fifth Amendment right against self-incrimination—might, when the accused is already represented by counsel, be "more likely to confound than enlighten." *Montejo*, 556 U.S. at 813 (Stevens, J., dissenting).

¶17. *Montejo* and *Jackson* are inapposite, as neither the majority nor the dissent in either decision would have found Lott's statement to have been involuntary; in both cases, the Court was addressing the question of whether *police* could initiate an interview. Both took

for granted that there would have been no constitutional violation if the suspect initiated the interview, as Lott did. And, at the risk of excess repetition of this crucial point, Lott was not represented by counsel at the time of the interview, so there was nothing confusing about her being told she had the right to an attorney before continuing with the interview.

¶18. Lott also attempts to tie her arguments to the recent amendments to Rule 7.2 of the Mississippi Rules of Criminal Procedure, in which this Court revised the rules to eliminate the period in which an accused could linger in custody after a preliminary hearing without the benefit of counsel. While it is true that Lott was not represented for about a month in this case, she was offered counsel after requesting the interview, and she declined.

## CONCLUSION

¶19. We conclude that there was nothing confusing or contradictory about Lott's situation. Lott's attorney told her he no longer represented her because he, in fact, no longer represented her. The officer may have believed Lott did have an attorney, but he correctly informed her that, regardless of whether she had one at that moment, she had the right to an attorney before continuing the interview and would be provided with one if she asked for it. Nothing in the record suggests Lott did not understand her rights when she waived them. We cannot find any abuse of discretion in the trial court's conclusion that Lott's statement was voluntarily given. We therefore affirm her conviction and sentence.

¶20. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**

7