## CIRCUIT COURT OF HENRICO COUNTY

Commonwealth of Virginia

v.

Jeff Paul Daniel Hope

February 29, 1988

Case Nos. 87F1256-7, 87M1030

By JUDGE JAMES E. KULP

The defendant stands charged with rape, breaking and entering with intent to commit rape, and unlawful entry. He has filed a motion and an amended motion to suppress certain statements which he claims were taken in violation to his rights under the Fifth and Sixth Amendments to the United States Constitution. The Court conducted hearings on defendant's motions on February 9 and 25, 1988.

### FACTS

Detective R. C. East of the Henrico Police Department received a telephone call at 4:30 a.m. on August 7, 1987, to respond to a report of a rape at an apartment complex in the county. During his investigation that day, Detective East was informed by some of the maintenance people that they had observed someone fitting defendant's description sitting on the back porch of the victim's apartment the night before. Detective East was also informed that defendant had been seen in an empty apartment across the street from the victim's apartment at about 10:30 p.m. the night

before. Ms. Mary Ann Fonseta, the apartment complex manager, advised Detective East that the defendant had no permission to be in the empty apartment the night before. Although Sue Loflin, the person in charge of cleaning empty apartments, had seen several other juveniles in the empty apartment along with the defendant, Detective East was only given the defendant's name as being in the apartment.

Detective East advised the defendant of his *Miranda* rights at 2:37 p.m., on August 7, 1987, telling the defendant that he was investigating both the unlawful entry and the rape. (Defendant's Ex. D). After denying any connection with the rape, the defendant consented to provide samples for a Perk Kit. (Defendant's Ex. E). The defendant was subsequently arrested at 4:00 p.m. that same day for the unlawful entry and bond was set at $500.00.

On August 10, 1987, defendant appeared before the General District Court where he filled· out a financial statement and requested the appointment of counsel. Finding defendant to be indigent, the Court appointed Gary Hershner. (Defendant's Ex. A). Mr. Hershner met with defendant some days later to obtain some background on the charge. The defendant knew he was a suspect in the rape but Mr. Hershner advised the defendant that he represented him only on the unlawful entry charge.

Sometime after August 16, 1987, Detective East received a series of telephone calls from Linda Carter, a friend of defendant, advising that defendant kept calling her but she did not want to become involved. Detective East advised her that she did not have to accept the calls, but what she did was up to her. On August 24, 1987, Ms. Carter called again saying defendant was upset. Detective East advised her that if the defendant wanted to talk to him and if he had a problem he would try to help. Both Ms. Carter and Detective East testified that Detective East never asked Ms. Carter to say anything to the defendant or to gather any evidence. The defendant later called Ms. Carter and asked her to call Detective East because he wanted to talk to him. She relayed this information to Detective East on August 24.

On August 25, 1987, at about 8:00 p.m., Detective East picked up the defendant from the jail, took him to the ·Public Safety building where he advised defendant

of his rights. (Defendant's Ex. F). After waiving his rights the defendant made a statement.

Some days before the statement was taken, Detective East had been advised that defendant had attempted suicide. When he went to the jail on the evening of August 25, Detective East learned that defendant was no longer in isolation from the suicide attempt but had been placed back in the general jail population. Before the interrogation the defendant advised Detective East that everything was all right and that no one was bothering him. During the interview, which lasted forty-five minutes, the defendant had his head down, and spoke in a soft tone. The defendant appeared to be oriented, knew what the interview was about and said he understood his rights. The defendant's responses to questioning were appropriate.

The evidence further showed that defendant is twenty years of age and was placed in a foster home when he was eleven months old. The defendant has an educational level of the sixth grade but functions on the level of the fourth grade in reading and writing. Defendant is a borderline retard with an IQ of 70-79. The defendant has been living on his own and has been able to work. He has been in and out of institutions for behavioral problems but not for psychiatric problems. The defendant was examined by Dr. Merritt W. Foster, Jr., pursuant to Court Order, and found not only competent to assist in his defense but was also sane at the time of the offense.

## LAW

### A. *Fifth Amendment Claim*

The defendant does not contest that he was properly advised of his *Miranda* rights, but asserts rather that his statements were not voluntary in that they were obtained as a result of trickery and deception, that defendant did not have the mental ability to appreciate the implications raised by his statements, and that psychological ploys, threats and promises were used to overcome defendant's will.

The burden rests upon the Commonwealth to prove voluntariness by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477 (1972). The Court finds that

the Commonwealth has borne its burden in this respect. No evidence was presented to the Court at either hearing to support defendant's assertions of trickery and deception, or psychological ploys, treats and promises. It should be noted that defendant did not testify during the suppression hearings.

The defendant did present evidence that he has a low IQ and limited educational level. These facts however do not *ipso facts* mean that defendant could not give a voluntary statement. "Intelligence and education are merely two elements in determining voluntariness." *Akers v. Commonwealth*, 216 Va. 40, 47 (1975) (defendant had IQ of 77 and tenth grade education). The evidence in this case, while showing a person of limited intellectual abilities, does not support a finding that defendant's intelligence was so limited that he could not understand his *Miranda* rights, exercise a rational thought process to waive those rights, and give a voluntary statement. The facts are just to the contrary. The defendant had been holding down a job, living on his own, and found to have sufficient cognitive abilities to assist in his defense. Detective East testified that defendant said he understood his rights and waived them. There was nothing in his conversation with defendant to lead Detective East to conclude that defendant had any difficulty in appreciating his circumstances.

There is no evidence in this case to show any coercion by Detective East or anyone else in obtaining defendant's statements. The interview lasted only forty-five minutes, there is no evidence that defendant was deprived of food or sleep, and nothing to establish that any force, physical or psychological, was utilized to gain any statement.

The voluntariness of a statement is judged by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Griggs v. Commonwealth*, 220 Va. 46 (1979). Considering all of the evidence, the Court is of the opinion that defendant's statements were voluntary.

## B. *Sixth Amendment Claim*

The defendant makes a two pronged attack under his Sixth Amendment claim. He asserts that his right to counsel was interfered with when Detective East questioned him

after counsel had been appointed to represent him, and that the police utilized Linda Carter to secure evidence against him after counsel had been appointed.

The first issue to be resolved is whether defendant had counsel at the time Detective East questioned him on August 25, 1987. The evidence is clear that defendant was arrested on August 7, 1987, for the charge of unlawful entry, and was appointed counsel pursuant to his request on August 10, 1987.

The Supreme Court in *Edwards v. Arizona*, 451 U.S. 477 (1981), held that an accused in custody who has "expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-485. The *Edwards* decision was to establish a bright-line rule to safeguard pre-existing rights, and "once a suspect has invoked the right to counsel, any subsequent conversation must be initiated by him. *Id.*, at 641. The Court extended the prophylactic rule announced in *Edwards* to the request for counsel made at arraignment in *Michigan v. Jackson*, 106 S. Ct. 1404 (1986). The Court concluding that the assertion of the right to counsel "is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment," *Id.*, at 1411, than when counsel is requested under *Miranda*.

Under *Michigan v. Jackson*, there is no doubt that when defendant requested counsel on August 10, 1987, the *Edwards* rule was applicable to the charge of unlawful entry for which he had been arraigned. No interrogation on that charge could be undertaken unless initiated by him. In this case the interview conducted by Detective East on August 25 did not pertain to the unlawful entry charge, but to unrelated charges of rape and breaking and entering. The defendant maintains that the ruling in *Michigan v. Jackson* should be extended beyond the charge for which a defendant has been arrested and arraigned to include any charge for which the defendant may be a suspect. To extend *Michigan v. Jackson* as suggested by the defendant, this Court would have to wrench it from its rational moorings and set it adrift into a sea of confusion and impracticality. This Court would also have

to ignore prior precedent of the Supreme Court to follow defendant's argument.

Under defendant's scheme, police officers would have to ascertain whether a suspect they wanted to question has been arraigned on any other charges anywhere and had made a request for counsel. The impracticability of such a requirement is apparent on its face. The requirements under *Miranda*, from which both *Edwards* and *Jackson* spring, have never been so interpreted as far as this Court can determine. *See Michigan v. Mosley*, 423 U.S. 96 (1975). Additionally, would the fact that a defendant had requested counsel in a case resolved years ago indicate his desire to deal with the police only through an attorney in an investigation for which he was now a suspect. Such questions show the confusion which would result by accepting defendant's invitation to extend *Jackson*.

When defendant was questioned on August 25, he was not under arrest for the rape and breaking and entering charges, but was merely a suspect. The Sixth Amendment right to counsel attaches only when formal judicial proceedings are initiated against an individual by way of indictment, information, arraignment, or preliminary hearing. *Kirby v. Illinois*, 406 U.S. 682 (1972). In *United States v. Gouveia*, 467 U.S. 180 (1984), the Supreme Court held that the Sixth Amendment right to counsel was not applicable to investigations conducted by authorities prior to the initiation of adversary judicial proceedings.

In *Maine v. Moulton*, 106 S. Ct. 477 (1985), relied upon by the defendant, the Supreme Court specifically held that police were not prohibited from investigating a defendant for charges of which he was a suspect even though he was being actively represented by counsel on other charges. The Court simply could not have arrived at such a conclusion if the appointment or retention of counsel for one charge meant that a person had counsel for all charges, known or unknown. In holding that "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses," *Id.*, at 490 n. 16, the Supreme Court recognized the legitimate interests of society in having new and additional crimes fully investigated. In this regard the Court said:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

106 S. Ct. at 489.

For the reasons expressed, the Court finds that when Detective East interviewed the defendant on August 25, 1987, the defendant had no Sixth Amendment right to counsel on the rape and breaking and entering charges and there was no violation of defendant's rights under *Michigan v. Jackson.* The Court further finds that defendant made an intelligent, knowing, and voluntary waiver of his Fifth Amendment right to counsel as set forth in subsection A.

Alternatively, the Court finds that even if the defendant had a Sixth Amendment right to counsel during the August 25 interview, there was no violation of any of defendant's rights. The evidence is uncontradicted that it was the defendant who initiated this interview with Detective East. Under such circumstances, the contact by Detective East was clearly permissible under *Edwards v. Arizona,* which is the underpinning for *Michigan v. Jackson. See Frye v. Commonwealth,* 231 Va. 370 (1986).

The defendant has further asserted that the authorities interfered with his Sixth Amendment right to counsel by employing Linda Carter to extract evidence from him in violation of *Massiah v. United States,* 377 U.S. 201 (1964), and *United States v. Henry,* 447 U.S. 264 (1980). Defendant's argument is untenable not only because the Court has found that no Sixth Amendment right to counsel had attached at the time of the interview on August 25, but the evidence will not support a contention that the authorities utilized Ms. Carter to gather evidence against the defendant. Both Detective East and Ms. Carter have denied that there was any effort on the part of Detective East or anyone else to have Ms. Carter gather evidence against the defendant. In *Kuhlman v. Wilson,* 106 S. Ct. 2616 (1986), the Supreme Court held that the Sixth Amendment is not violated whenever by luck or happenstance the State obtains incriminating

statements from the accused after the right to counsel has attached. A defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reports his incriminating statements to the police. The burden rests upon the defendant to demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks.

The Court finds that the defendant has failed to demonstrate any such action by Detective East or Ms. Carter.

For the reasons set forth in this opinion, the Court denies the defendant's Motion to Suppress.