**UNITED STATES**

v.

**James W. HANES, 176 66 1401 Mess Management Specialist Seaman (E–3), U.S. Naval Reserve.**

**NMCM 91 1549.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 28 Feb. 1991.

Decided 24 April 1992.

LT Mary L. Livingston, JAGC, USNR, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before WILLEVER, STRICKLAND and ORR, JJ.

ORR, Judge:

Consistent with his pleas, the appellant was convicted of unlawfully entering a Navy galley with the intention of committing larceny, willfully damaging four combination safes in the galley, stealing over $1,600.00 in the forms of a check and currency from the safes, shoplifting from a Navy Exchange store, and three specifications of distributing marijuana for money in violation of Articles 130, 108, 121, and 112a, respectively, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 930, 908, 921, and 912a. Before a military judge sitting alone, the appellant was sentenced to confinement for 10 years, forfeiture of all pay and allowances, reduction to pay grade E-1, and a dishonorable discharge.

The appellant's guilty pleas to the three offenses of unlawful entry, damage to the safes, and theft from the safes were entered conditionally following the military judge's denial of the appellant's motion to suppress the second of two statements he gave to agents of the Naval Investigative Service (NIS). Before this Court, the appellant assigns as errors the military judge's denial of that motion and the severity of the sentence to confinement.[1]

We initially address the appellant's first assignment of error. On the same day the appellant made his initial statement to NIS he also consented to a search of his quarters and he was placed in pretrial confinement. Both the advice he received concerning his rights prior to the interrogation and the advice he received under Rule for Courts-Martial (R.C.M.) 305(e), Manual for Courts-Martial, United States, 1984, about his pretrial confinement rights were limited to the drug offenses.[2] Appellate Exhibits (AE) III and IV. In pertinent part, the latter contained the appellant's initialled declaration: "I have the right to request assignment of military counsel. Such counsel may be assigned for my hearing only." At the end of the advice statement, in the block entitled "DECISION TO HAVE MILITARY COUNSEL PRESENT", the appellant indicated he wanted to have military counsel present after the following statement: "In addition to the other rights previously explained, I understand I may request a military counsel to be present at my initial review." The senior defense counsel at the local Naval Legal Service Office testified that counsel for pretrial confinement hearings are assigned as much as a month in advance from a rotating "watch" bill. Record at 46.

---

1. I. THE MILITARY JUDGE ERRED BY DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT TO NAVAL INVESTIGATIVE SERVICE AGENTS WHICH WAS OBTAINED AFTER APPELLANT HAD REQUESTED LEGAL REPRESENTATION, BUT WITHOUT COUNSEL PRESENT.
   II. A SENTENCE WHICH INCLUDES 10 YEARS CONFINEMENT IS INAPPROPRIATELY SEVERE UNDER THE CIRCUMSTANCES OF THESE OFFENSES.

2. Although the scope of the appellant's first statement was supposed to include the appellant's "involvement in the use and sale of marijuana," only one sentence of that five-page statement mentions the appellant's use of drugs: "He [Nick L.] and I have gotten high together on several occassions [sic], but I can't recall any specific times or dates." Appellate Exhibit III at 3. It does not appear from the record before us that the appellant has ever been charged with the use of controlled substances.

The senior defense counsel also testified that although he generally assigns the same counsel to represent an accused as appeared at a pretrial confinement hearing for the same servicemember, he does not assign a defense counsel to represent an accused at a court-martial until some time after the pretrial confinement hearing has been held. Record at 52–53.

Three days after the appellant was placed in pretrial confinement and a day before the appellant's pretrial confinement hearing was held, the NIS agents who conducted the initial interrogation of the appellant sought to question him again about a break-in and theft that had occurred at the galley about 5 months earlier. (This second interrogation resulted from the discovery of a bag of burglary tools in the appellant's quarters during the consent search conducted the same day as the initial interrogation.) Prior to questioning the appellant this second time, one of the agents ascertained from the brig that no defense counsel had been assigned to represent the appellant. In fact, no contact had occurred between the appellant and any defense counsel for any purpose prior to this second interrogation. The appellant was not asked either before or during the second interview whether he had ever made any request for counsel, and the appellant did not volunteer that he had ever made any such request. Testifying for the purposes of the motion, the appellant stated that: (1) when he was advised of his pretrial confinement rights, the only explanation he was given about counsel was that the attorney would be there for the magistrate's hearing (record at 55); (2) he understood that the attorney that was assigned for the magistrate's hearing might not be his lawyer for anything more than just that hearing (record at 57); (3) when he was questioned by NIS the second time, he wanted to cooperate, he thought at the

time that it was in his best interest to cooperate, and he never requested counsel before or during questioning even though he knew all he had to do was ask for counsel (record at 60–61); and, (4) when the NIS agents advised him of his rights prior to the second interrogation, he did not think his request for a lawyer at the pretrial confinement hearing constituted in any way a request for counsel at the interrogation (record at 62).

During his testimony on the motion, the appellant nevertheless tried to convey the impression that he viewed his execution of the request for counsel at the pretrial confinement hearing as a general request for the assistance of counsel on his case as a whole. While the language of the pretrial confinement advice contains the ambiguous statement that counsel "may be assigned for ... [the appellant's] hearing only," the military judge concluded in his essential findings that, notwithstanding the appellant's in-court assertions, the evidence demonstrated that the appellant's request for counsel in that situation was for the limited purpose of the confinement hearing. AE VIII. We agree with that factual determination, and we also conclude that the appellant understood that the request was so limited even though the appellant recognized the possibility that his counsel at the pretrial confinement hearing might ultimately be his counsel at a subsequent court-martial.

At the second interrogation, the appellant was advised that he was suspected of "the use, possession, and/or transfer of marijuana, narcotics, and dangerous drugs, and breaking and entering, safecracking, and larceny." Although a small portion of the appellant's second statement includes information about the appellant's use of marijuana and LSD,[3] no charges were

---

**3.** Our review of this second statement, AE IV, is not aided by the fact that portions of the exhibit were redacted in an apparent overabundance of caution when the statement was later offered in evidence as a prosecution exhibit during the presentencing portion of the court-martial. Although the trial was conducted before the military judge sitting alone, the defense counsel

objected to acts of uncharged misconduct (the use of marijuana and LSD) reflected in the document and specifically sought to have those portions of the prosecution exhibit redacted even though the military judge stated that he would not consider any uncharged misconduct appearing in the statement. Redacting the statement as a prosecution exhibit is one thing,

brought concerning those possible offenses. Virtually all of the statement concerns the appellant's knowledge of and participation in the break-in and theft at the galley, and the information about the appellant's use of marijuana and LSD was only revealed in the context of the appellant's explanation of how he became acquainted with the individual who participated with him in the break-in. In addition, both of the NIS agents involved in the second interrogation testified that the purpose of that interview was to find out whether the appellant was involved in the break-in and theft (record at 18 and 26), and the military judge so found (AE VIII). We expressly agree with that factual determination.

In support of this assignment of error, the appellant cites the U.S. Supreme Court's vacation of the U.S. Court of Military Appeals' decision in *United States v. Jordan,* 29 M.J. 177 (C.M.A.1989), and its remand for further consideration in light of the Supreme Court's decision in *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). *Jordan v. United States,* —— U.S. ——, 111 S.Ct. 575, 112 L.Ed.2d 580 (1990). The factual circumstances of *Jordan* differ significantly from those now before us. After a series of statements and admissions to both military and civilian investigators concerning the death of his barracks roommate, Jordan was appointed a military defense counsel even though charges had not yet been preferred against him. Jordan subsequently met with that counsel for several hours in the brig where Jordan was then incarcerated. Almost immediately after that consultation and pursuant to an arrest warrant, Jordan was released from the brig into the custody of civilian police who were aware that Jordan had a military attorney but believed that attorney had no "authority" off the military installation. Consequently, the civilian police made no attempt to contact Jordan's military defense counsel (and Jordan made no request for his presence) while taking two otherwise voluntary and

properly warned confessions from Jordan concerning the robbery and murder of his roommate. When the decision was ultimately made to relinquish jurisdiction to the Navy in this pre-*Solorio*[4] case, the trial counsel's attempt to use the last two confessions raised the question of their admissibility in a military justice context. 29 M.J. at 178–85.

The basis for the disagreement on the Court of Military Appeals between Judge Cox, as the author of the lead opinion in *Jordan,* and then-Chief Judge Everett, in his dissenting opinion, was whether the assignment of a military defense counsel and the formation of an attorney-client relationship based upon the actual consultation at the brig constituted a request for counsel by Jordan under the Supreme Court cases interpreting the Fifth Amendment. Chief Judge Everett assumed that military counsel was assigned under R.C.M. 305(f) because Jordan was a pretrial confinee and had requested military counsel. 29 M.J. at 191. Citing *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), Chief Judge Everett concluded that it made no difference whether the interrogator was aware or unaware of the request for counsel since the focus is on the state of mind of the person being questioned. In his view, nothing in the record indicated that the defense counsel's representation was limited to pretrial confinement proceedings, and he noted that the defense counsel assigned testified that he was told by his supervisor that he was going to represent Jordan with respect to a murder charge. *Id.* at 190. Consequently, Chief Judge Everett concluded that the assignment of military defense counsel to Jordan and the acceptance of his services by Jordan constituted a request for counsel under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and *Roberson. Jordan,* 29 M.J. at 191.

In the lead opinion, however, Judge Cox stated:

> the Fifth Amendment exclusionary rule is triggered when an accused who has

---

but attempting to redact the statement as an appellate exhibit was improper.

**4.** *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987).

been advised of his rights *communicates to law-enforcement personnel that he is unwilling to talk to them except through the medium of counsel. Ordinarily—but not necessarily—this occurs during an attempted interrogation....* The mere fact, however, that appointed military counsel went to the brig and discussed some aspects of the case with appellant is not ... an invocation of the Fifth Amendment right to counsel....

29 M.J. at 188 (citations omitted). Judge Cox also pointed out that Jordan never claimed to have invoked a right to counsel either at trial or on appeal and that no one had suggested that Jordan had ever sought to convey to anyone a desire to communicate with police only through the medium of counsel. *Id.*

One point on which both Chief Judge Everett and Judge Cox agreed in their respective opinions in *Jordan*, however, was that neither considered a pretrial confinement hearing an adversarial judicial proceeding for the purposes of the Sixth Amendment right to counsel.[5] 29 M.J. at 187 and 189. The preferral of charges initiates adversarial judicial proceedings in the armed forces for the purposes of the Sixth Amendment right to counsel. *United States v. Wattenbarger*, 21 M.J. 41 (C.M.A.1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3272, 91 L.Ed.2d 563 (1986). In this context, the Supreme Court remanded *Jordan* for reconsideration in light of *Minnick v. Mississippi.*

■ Writing for the majority in *Minnick*, Justice Kennedy described the issue in that case in exclusively Fifth Amendment terms:

To protect the privilege against self-incrimination guaranteed by the Fifth Amendment, we have held that the police must terminate interrogation of an accused in custody if the accused requests the assistance of counsel. *Miranda v. Arizona....* We reinforced the protections of *Miranda* in *Edwards v. Arizona*, ... which held that once the accused requests counsel, officials may not reinitiate questioning "until counsel has been made available" to him. The issue in the case before us is whether *Edwards'* protection ceases once the suspect has consulted with an attorney.

111 S.Ct. at 488 (citations omitted). While *Minnick* may have some application to Jordan,[6] it has little application to the case before us because Hanes never consulted with an attorney before the second interrogation. The Fifth Amendment issue that confronts us is whether Hanes' request for counsel at his pretrial confinement hearing constituted either an invocation of "his right to have counsel present during custodial interrogation[s]" or the expression of "his desire to deal with the police only through counsel." *Edwards*, 101 S.Ct. at 1884–85. Based upon our review of the facts, as outlined above, we find that it did not.

We think it is clear from his testimony that the appellant intended to exercise his right to counsel for Sixth Amendment purposes—to have counsel present and to assist him at all adversarial judicial proceedings—whenever such a right arose or was available to him. From a factual context more developed on this issue than that before the Court of Military Appeals in *Jordan*, we also think it is clear (1) that Hanes fully understood the distinction between his request for the presence and assistance of counsel for judicial proceedings and the presence and assistance of counsel for interrogations by investigators, and (2) that, as to the interrogations, he made a knowing and intelligent waiver of his Fifth Amendment right to counsel and a fully voluntary statement to NIS when he acknowledged his participation in the break-in and theft at the galley.

---

5. "Because of its limited function and its nonadversary character, the probable cause determination [for detaining a criminal defendant in pretrial confinement] is not a 'critical stage' in the prosecution that would require appointed counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975).

6. *Jordan* has been further remanded by the Court of Military Appeals to this Court, 32 M.J. 376 (C.M.A.1991), and is pending Panel Two's decision on reconsideration.

We find support of our resolution of this issue in a Supreme Court decision that post-dates the remand of *Jordan* and involves an application of the rights to counsel under both the Fifth and Sixth Amendments. In *McNeil v. Wisconsin*, —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), McNeil was arrested for an armed robbery, refused to answer any questions when police sought to interview him but did not request counsel, and appeared at a bail hearing with an attorney from the public defender's office. Subsequently, McNeil was interviewed several times about three other crimes, and in each instance, he waived his *Miranda* rights and gave a voluntary statement. Before the Supreme Court, "[h]e contended that his courtroom appearance with an attorney for the ... [armed robbery] constituted an invocation of the *Miranda* right to counsel, and that any subsequent waiver of that right during police-initiated questioning regarding any offense was invalid." 111 S.Ct. at 2207 (emphasis omitted).

> He [McNeil] contends that, although he expressly waived his *Miranda* right to counsel on every occasion he was interrogated, those waivers were the invalid product of impermissible approaches, because his prior invocation of the offense-specific Sixth Amendment right with regard to the ... [initial armed robbery offense] was also an invocation of the non-offense-specific *Miranda–Edwards* right.

111 S.Ct. at 2208.

The Court initially noted that McNeil's Sixth Amendment right to counsel had attached by the time the interrogations were conducted after the bail hearing because by then he had been formally charged for the first armed robbery. 111 S.Ct. at 2207. The Court then disposed of McNeil's contention by stating that the *Miranda–Edwards* guarantee under the Fifth Amendment

> is in one respect narrower than the interest protected by the Sixth Amendment guarantee (because it relates only to custodial interrogation) and in another respect broader (because it relates to interrogation regarding *any* suspected crime

and attaches whether or not the "adversarial relationship" produced by a pending prosecution has yet arisen). To invoke the Sixth Amendment interest is, as a matter of *fact, not* to invoke the *Miranda–Edwards* interest.... The rule of ... [*Edwards*] applies only when the suspect "ha[s] *expressed*" his wish for the particular sort of lawyerly assistance that is the subject of *Miranda*.... It requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.* Requesting the assistance of an attorney at a bail hearing does not bear that construction.

111 S.Ct. at 2209 (citations omitted). Consequently, the Court concluded that a request for the assistance of counsel at an adversarial stage of proceedings under the Sixth Amendment in regard to one offense does not give rise to a Fifth Amendment restriction on a custodial interrogation regarding another offense. 111 S.Ct. at 2210. In reaching that conclusion, however, the Court distinguished its decision in *Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), where the Court had held that once the right to counsel under the Sixth Amendment has attached, any subsequent waiver during a police-initiated custodial interview about the offense or offenses to which the Sixth Amendment right had attached was ineffective.

■ *Jackson* also has no application to the case before us because, as both Chief Judge Everett and Judge Cox agreed in *Jordan,* a pretrial confinement hearing under R.C.M. 305(i) is not a judicial proceeding giving rise to a Sixth Amendment right to counsel and because no charges had yet been preferred against Hanes when NIS conducted the second interview. In addition, it is clear from *McNeil* that the Supreme Court did not consider the civilian bail hearing to be the functional equivalent of a custodial interrogation since, if the Court had reached that conclusion, the request for counsel at that hearing would have invoked the non-offense-specific Fifth

Amendment right to counsel, which would have barred McNeil's later confessions to the three other crimes. We see no difference in that situation and a request for counsel at an R.C.M. 305(i) hearing. Consequently, if a *Miranda–Edwards* guarantee under the Fifth Amendment does not arise for subsequent interrogations concerning different offenses as a result of a request for counsel at a civilian bail hearing, it can hardly arise as a result of a request for counsel at an R.C.M. 305(i) hearing where a servicemember, like Hanes, is being held for offenses that are not the subject of the subsequent interrogation. Therefore, a request for counsel at an R.C.M. 305(i) hearing before charges have been preferred neither invokes a Sixth Amendment right to counsel because the hearing is not an adversarial proceeding nor invokes a Fifth Amendment right to counsel because the hearing is not the functional equivalent of a custodial interrogation.[7] We find no Fifth or Sixth Amend-

ment right to counsel violations in the admission of the appellant's second statement.

 As to the appellant's second assigned error, we do not find a sentence which includes confinement for 10 years to be too severe under the circumstances of this case. The variety, quantity, and gravity of the offenses committed by the appellant fully justify the sentence he received.

Accordingly, the findings and sentence as approved on review below are affirmed.

Chief Judge WILLEVER and Senior Judge STRICKLAND concur.

---

7. Even if the Sixth Amendment right to counsel attached as a result of Hanes' request for counsel at his R.C.M. 305(i) hearing, it would appear that the *McNeil* decision would not bar Hanes' subsequent confession to offenses for which he had not been confined.