**UNITED STATES of America**

v.

**Scott C. KEELER, Defendant.**

**No. 91–CR–257S.**

United States District Court,
W.D. New York.

Jan. 7, 1993.

Paul J. Campana, Asst. U.S. Atty., Buffalo, NY, for U.S.

Herbert L. Greenman, Buffalo, NY.

Michael M. Blotnik, Buffalo, NY, for defendant.

## ORDER

SKRETNY, District Judge.

The defendant, through counsel, has made a motion to suppress certain statements made by the defendant.

This Court, by its Order dated October 5, 1992, referred the above motion to the Honorable Carol E. Heckman, United States Magistrate Judge for the Western District of New York, pursuant to 28 U.S.C. § 636(b)(1)(B).

Following oral argument on defendants' motion, Magistrate Judge Heckman issued a Report and Recommendation on October 26, 1992, granting defendant's motion to

his federal claims; it is unclear why he now decides to concern himself with judicial economy.

suppress in its entirety, copies of which were mailed to counsel for the parties by the Clerk of the Court. No objections to the Report and Recommendation have been received from either of the parties within ten (10) days from the date of its service, in accordance with 28 U.S.C. § 636(b)(1)(C) and Local Rule 30(a)(2).

 Accordingly, after careful review, this Court hereby adopts the Report and Recommendation, including the authorities cited and the reasons given therein. Thus,

IT HEREBY IS ORDERED, that defendant's motion to suppress certain statements made by the defendant is GRANTED.

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant moves to suppress certain oral statements made by him following his arrest and before his attorney was present. The facts underlying Defendant's arrest are outlined in the Decision and Order of Hon. William M. Skretny, U.S. District Court Judge, dated June 7, 1992.

A hearing was held on Defendant's suppression motion on October 8, 1992. The Government called two witnesses, Detective Ross McQuade, a member of the Niagara County Drug Task Force, and James Hildreth, a Deputy in the Niagara County Sheriff's Department. The Defendant testified on his own behalf.

The testimony established that on September 17, 1991, the Defendant was arrested in the backyard of 791 Meadow Drive, Tonawanda, New York. The Defendant was ordered to lie on the ground and was handcuffed. Approximately 15 minutes after the Defendant was arrested, Deputy Sheriff Hildreth arrived and read the Defendant his *Miranda* warnings.

The relevant testimony from Detective McQuade was as follows. He overheard Deputy Hildreth read the Defendant his *Miranda* warnings. McQuade was sitting on a bucket in the immediate vicinity of the Defendant when the rights were read to him. Hildreth was standing above the Defendant, and the Defendant was lying on his stomach, face down on the ground. The Defendant made no response after being read his rights. Detective McQuade then looked at the Defendant and pointed to the marijuana plants growing in the backyard and said "What's this?" The Defendant responded, "You got to get your marijuana someplace." The Defendant requested to talk to a lawyer after making the statement about the marijuana plants. Detective McQuade was somewhat in a state of shock because his partner, Investigator Mark Driess had earlier attempted to shoot Defendant's dog, but had wounded himself in the leg instead.

Deputy Hildreth testified that he arrived at the backyard at 791 Meadow Drive shortly after 6:00 p.m. on the day of the arrest. The Defendant was already lying on the ground, face down, with his hands handcuffed behind his back. Hildreth searched the Defendant and then read him his *Miranda* rights from a card. His testimony as to the rights was as follows:

Q. Could you read from it now as you did then to Mr. Keeler?

A. You have the right to remain silent and refuse to answer any questions. After that I asked him, did you understand that right. He said yeah. Anything you say may be used against you in a Court of law. I asked him, do you understand that right. He said yeah. As we discuss this matter you have the right to stop answering my questions at any time that you so desire. Again I asked him, do you understand that right. He said yeah. You have the right to a lawyer before speaking to me, to remain silent until you can talk to him, and to have him present when you're being questioned. Again I asked him, do you understand that right. He said yeah. If you desire a lawyer but cannot afford one, one will be appointed to you without cost. Again I asked him if he understood that. He said yeah. Do you un-

derstand each of these rights I've explained to you. He said yeah. Now that I have advised you of your rights, will you answer my questions without an attorney? He did not reply to that question.

Deputy Hildreth testified that while he was advising the Defendant of his rights, McQuade had stepped away. The Defendant's face was facing the ground as he was read his rights and as he was answering the questions. Deputy Hildreth was on his knees with his face close to the Defendant when he read him his rights. Hildreth also testified that he interpreted Defendant's failure to answer the last question as a refusal to answer without an attorney. He did not advise Deputy McQuade that Defendant had not answered the last question posed. He also testified that 5 to 7 minutes passed between the time he advised the Defendant of his rights and the time that Detective McQuade had his conversation with the Defendant.

The Defendant testified that after he was read his rights and asked if he wished to talk without an attorney, he stated, "No, I want an attorney." When he requested an attorney, he was lying on the ground face down with his hands handcuffed behind his back.

### DISCUSSION

■■■ The testimony at the hearing clearly established that the Defendant was in custody when he made the statement at issue and that *Miranda* rights were read to the Defendant. If a suspect requests counsel, all interrogation must cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Government bears the burden of proving by a preponderance of the evidence that the Defendant's statement was made after a knowing and voluntary waiver of his *Miranda* rights. *Michigan v. Harvey*, 494 U.S. 344, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990); *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *see also, U.S. v. Gotay*, 844 F.2d 971 (2d Cir.1988).

■■■ The dispute is whether or not the Defendant asserted his right to an attorney. The Defendant has testified that he has, whereas Detective McQuade indicated that the Defendant did not. Deputy Hildreth stated that the Defendant was silent in response to the question of whether he was willing to answer questions without an attorney, and that he interpreted this as a request for counsel. Thus, this motion presents questions of credibility.

There were several key inconsistencies in the police officers' testimony. For example, Detective McQuade indicated that he was sitting on the bucket in the immediate vicinity of the Defendant throughout the time that the Defendant was read his rights. Furthermore, he testified that Deputy Hildreth was standing above the Defendant at the time he was read his *Miranda* warnings. Deputy Hildreth indicated that he was kneeling next to the Defendant when he read him his rights and that McQuade had walked away from the area during that time.

Of the two police witnesses, I find Deputy Hildreth to be more credible based on his demeanor on the stand as well as the precision of his testimony. Significantly, Hildreth testified that the Defendant did not reply to his last question: "Now that I have advised you of your rights, will you answer my questions without an attorney?" Hildreth interpreted this silence as a request for an attorney. This interpretation is further underscored by the fact that no other officers attempted to question the Defendant. Had Defendant waived his right to counsel according to Hildreth, McQuade did not question the Defendant until 5 to 7 minutes had elapsed after the *Miranda* warnings were given.

In *Miranda v. Arizona*, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694 (1966), the Supreme Court stated, "[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given...." This language was reaffirmed in *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979). If there is any question as to whether Defendant waived his

right to counsel, "[d]oubts must be resolved in favor of protecting the constitutional claim.... [We must] give a broad, rather than a narrow, interpretation to a defendant's request for counsel." *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S.Ct. 1404, 1409, 89 L.Ed.2d 631 (1986).

Furthermore, according to the testimony of Hildreth, the rights were read to the Defendant in a personal manner. For example, Hildreth testified that he advised the Defendant: "As *we* discuss this matter, you have the right to stop answering *my* questions at any time that you so desire," and "you have the right to a lawyer before speaking to *me*...." The questioning at issue obviously was not done by Hildreth, and therefore even if the Defendant had advised Hildreth he was willing to talk without an attorney, there would be ambiguity as to whether that waiver also extended to questioning by McQuade.

Finally, the Defendant testified that he *did* request counsel upon being advised of his *Miranda* rights and prior to the admission in question. I find this testimony to be credible.

Considering all of the testimony and weighing the credibility of the witnesses, Defendant's statement should be suppressed.

The Government has also requested a determination on the voluntary nature of the statement in the event the Defendant testifies at trial. *See, e.g., Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Given the totality of circumstances, I find no reason to conclude that the statement was involuntary when given.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

*Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Government and the Defendant.

SO ORDERED.

DATED: Buffalo, New York

October 26, 1992.