IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 9, 2007

**STATE OF TENNESSEE v. CHRISTOPHER PERRY**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08489     Carolyn Wade Blackett, Judge**

---

**No. W2006-01935-CCA-R3-CD  - Filed September 28, 2007**

---

The appellant, Christopher Perry, was convicted of the first degree murder of Stanley Johnson, and he received a sentence of life imprisonment.  In the instant appeal, the appellant challenges the trial court's denial of his motion to suppress, arguing that the court should have found that his Sixth Amendment right to counsel was violated.  Upon reviewing the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and J.C. MCLIN, JJ., joined.

Gregory Thomas Carman, Memphis, Tennessee, for the appellant, Christopher Perry.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dennis Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

After the appellant's conviction for first degree murder, he appealed to this court, challenging the sufficiency of the evidence supporting his conviction  and the trial court's denial of his motion to suppress "in violation of his Fifth and Sixth Amendment rights."  State v. Christopher Perry, No. W2004-03004-CCA-R3-CD, 2005 WL 3533338, at *1 (Tenn. Crim. App. at Jackson, Dec. 22, 2005).  During the appellant's first direct appeal, this court recounted the proof adduced at trial:

> On the night of July 29, 2003, in the aftermath of a storm
> which downed power lines and caused a blackout in Shelby County
> for several days, the Appellant stopped at his aunt's house at 1160

James Street in Memphis to check on his mother. After entering the house for a short time, the Appellant returned to the front porch and noticed that the hood of his red and white 1982 Dodge truck was up and that someone was under the hood. The Appellant ran toward the victim, whom he did not know, hitting the victim with a plastic porch chair. The victim, Stanley Johnson, attempted to flee; however, the Appellant chased after him and upon catching the victim, the two "tussl[ed] for a while[,] and then they let each other go." The victim attempted to explain to the Appellant that he was not trying to steal the truck's radio, rather he was only checking to see if the radio worked. Wires, however, could be observed hanging from the space which had housed a radio. The Appellant, whose demeanor was described as "fired-up, mad, angry," told the victim that he was "a walking dead man." The Appellant then got into [his grandmother's] white Dodge truck and drove to his mother's house on Castilia Street, where he also resided.

Upon reaching his mother's house, the Appellant found his brother, his girlfriend, and several friends present, as the residence was in one of the few areas of Memphis that still had electricity. Those present described the Appellant as acting "wild, crazy, and just losing his mind," as he explained to the group that he had caught someone stealing the radio from his truck. The Appellant was overheard stating that "he was going to finish the boy off." He then secured a 9 mm pistol from his room and asked his girlfriend, Danielle Hardin, to accompany him as he returned to the James Street address to return his mother home.

As the Appellant was approaching James Street, he noticed a person on the street and stopped his truck. Although the street lights provided no illumination, the Appellant recognized the person as the man who had earlier stolen the truck radio. As the man reached for an object tucked beneath his arm, the Appellant ran toward the man with his pistol, firing as he ran. The victim collapsed to the ground. The Appellant ran back to his truck and quickly left the scene. He then drove to the home of his friend Brian Turner, where he asked to leave the gun to avoid getting "a weapons charge." The Appellant explained to Turner that someone had attempted to break into his truck and that he had been in a fight and had fired the gun.

The following day Turner learned that a shooting had occurred the previous night, and he returned the gun to the Appellant's home, placing it in a boat near the back door. Shortly thereafter, the pistol

was found in the boat by a family member, and several of the Appellant's friends disposed of the weapon in Martin Luther King Park in a location near the Mississippi River.

On July 29th, Darren Boyce with the Crime Scene Department of the Memphis Police was called to the crime scene and found the victim's body in the middle of James Street on his stomach with his hands to the side. Four 9 mm shell casings were also found at the scene. On July 31st, Officer Frank Sousoulas with the Memphis Police Department was directed to Martin Luther King Park where he recovered a 9 mm Beretta semiautomatic on an embankment sloping toward the Mississippi River. Shelby County Medical Examiner, Doctor O.C. Smith, who performed an autopsy on the victim, testified that the victim died from a gunshot wound to the back of the head.

On July 30, 2003, the Appellant's mother advised her son to report to the police department, at which time the Appellant gave a statement to Memphis Police Officer James Howell. The Appellant was Mirandized and signed an advice of rights form. In this statement the Appellant denied any responsibility for the victim's death or possessing a firearm.

While at the dentist's office recovering from three root canals on August 4, 2003, the Appellant was arrested for the murder of Stanley Johnson. He was again informed of his Miranda rights. On this date, the Appellant gave a statement to Sergeant Sims of the homicide bureau admitting that he did shoot the victim with a 9 mm pistol; however, he claimed that the shooting was accidental.

Id. at **1-2 (footnote omitted).

On appeal, this court concluded that there was sufficient evidence to support the appellant's conviction and that the trial court did not err in denying the motion to suppress on Fifth Amendment grounds. Id. at *1. However, this court found that the trial court had not properly entered findings on the appellant's Sixth Amendment claims. Therefore, we remanded to the trial court for further findings. Id. On remand, the parties agreed to rely on the proof adduced at the original suppression hearing. The trial court entered an order finding that the appellant waived his right to counsel, and, therefore, "the statement was not taken in violation of the [appellant's] Sixth Amendment right to counsel." In the instant appeal, the appellant challenges the trial court's ruling.

## II. Analysis

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the State, as the prevailing party, is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23. Moreover, we note that "in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial." State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998).

As we earlier noted, on remand the trial court entered an order based upon the original suppression hearing, addressing the appellant's Sixth Amendment claims. At the suppression hearing, the proof revealed that on the day of the appellant's arrest, he had been at the dentist's office all day undergoing three root canal procedures. At 4:30 p.m., police came to the dentist office and arrested the appellant. After the appellant's arrest, police took the appellant to the homicide office for questioning.

Sergeant Sims, who was killed in a boating accident two months prior to the suppression hearing, was the lead officer in the interview of the appellant. However, Sergeant Ernestine Davison was present when Sergeant Sims advised the appellant of his Miranda rights as follows:

> Christopher Shaunn Perry, you are under arrest and may be charged with murder in regards to this complaint. I am going to ask you some questions regarding the above complaint. You have the right to remain silent and anything you say can be used against you in a court of law. You have a right to have a lawyer, either of your own choice or court appointed if you are unable to afford one, and to talk with him before answering any questions and to have him with you during questioning if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time until you talk to a lawyer. Do you understand each of these rights I have explained to you and do you wish to make a statement now?

Sergeant Davison said that the appellant stated that he did wish to make a statement, and she had the appellant to "initial the statement where these rights are embodied." Sergeant Davison was also present when the appellant gave and signed his statement. Sergeant Davison said that the appellant never requested counsel or stated that he wanted his lawyer present while she was in the room. The appellant initiated conversation and responded to questions. Additionally, Davison stated that the

appellant did not appear to be under the influence of any substance nor did he say he was on medication. She also stated that he did not indicate that he was in pain or was upset in any way.

At the suppression hearing, the appellant testified that when he and Sergeant Sims were alone he told Sergeant Sims, "I said I want my lawyer." He maintained that Sergeant Sims told him that "you don't get a lawyer right now" then proceeded to question the appellant. The appellant denied signing a waiver of his Miranda rights. During the interview the appellant admitted shooting the victim. His statement was reduced to writing, and the appellant signed the statement.

Additionally, our review of the trial transcript reveals that Sergeant Fitzpatrick testified that he was present with Sergeant Sims at the beginning of the appellant's interview.[1] Sergeant Fitzpatrick said that the appellant was advised of his Miranda rights, and he agreed to speak with the officers. Sergeant Fitzpatrick stated that the appellant did not appear to be under the influence of any substance, and his behavior was normal. The appellant did not indicate while Sergeant Fitzpatrick was in the room that he wanted an attorney or that he wanted to wait on his attorney before speaking with the officers. Sergeant Fitzpatrick maintained that he left the interview room, and did not return, after the appellant asked to speak to Sergeant Sims alone.

As this court has previously explained on direct appeal:

> The right to counsel provided by Miranda under the Fifth Amendment protects against coercion relative to self-incrimination, thus assuring voluntariness, while the right under the Sixth Amendment guarantees the right to legal assistance at any critical confrontation with state officials, irrespective of coercion. In the Sixth Amendment protections, if adversarial proceedings have begun, the accused may not be subjected to further interrogation by government authorities until counsel has been made available to him, unless the accused himself initiates further communication. See Michigan v. Jackson, 475 U.S. 625, 636, 106 S. Ct. 1404, 1411, 89 L. Ed. 2d 631 (1986). Thus, the initial determination is whether adversarial proceedings have been initiated invoking the Sixth Amendment right to counsel.

Moreover, in the appellant's first appeal, this court stated:

> The Sixth Amendment guarantees the accused, after the initiation of formal charges, the right to rely on counsel as a medium between himself and the State. Maine v. Moulton, 474 U.S. 159, 176, 106 S. Ct. 477, 487, 88 L. Ed. 2d 481 (1985). Unlike the Fifth Amendment, under the Sixth Amendment, the accused need not make

---

[1] Sergeant Fitzpatrick did not testify at the suppression hearing.

an unequivocal request for counsel to invoke the right. See Jackson, 475 U.S. at 633, 106 S. Ct. at 1409. A presumption exists that the accused requests the services of counsel at every critical state of the prosecution. Id.

When a defendant challenges the admissibility of a confession based upon the State's infringement of his Sixth Amendment right, the State bears the burden of showing that the appellant made a knowing and voluntary waiver of his right to counsel; see [Williams, 430 U.S. at 404, 97 S. Ct. at 1242], and any doubts must be resolved in favor of protecting the constitutional claim. Jackson, 475 U.S. at 633, 106 S. Ct. at 1409. In this regard, although not determinative as to whether a knowing waiver was provided, a specific request for counsel is considered "an extremely important fact in considering the validity of a subsequent waiver in response to police-initiated interrogation." See Id. at n.6.

Perry, No. W2004-03004-CCA-R3-CD, 2005 WL 3533338, at *6.

Initially, we are compelled to note that despite this court's explicit instructions, the trial court failed to make a finding of fact regarding whether adversarial proceedings had begun against the appellant. Id. Regardless, the record reflects that the appellant was under arrest at the time he gave his statement; however, the record does not indicate at what point an arrest warrant was issued. The record also reflects that the indictment against the appellant was not returned until several months after the statement was given. In any event, the trial court found that

[b]ased on the testimony given during the hearing and the apparent valid Waiver of Rights and Formal Statement made by the [appellant], the State has met its burden of proving by a preponderance of the evidence that the statement given by the [appellant] was a knowing and voluntary waiver of his right to counsel in compliance with the requirements of the Sixth Amendment and Brewer v. Williams 430 U.S. 387 (1977).

Taken with the trial court's statements after the suppression hearing, we conclude that the trial court's ruling implicitly accredited the testimony of the officers at the suppression hearing and at trial while discrediting the testimony of the appellant that he invoked his right to counsel and that he did not sign the Miranda waiver. The officers testified that the appellant was Mirandized prior to giving his statement, and he waived his Miranda rights. This court has held that ordinarily a valid Miranda waiver, such as the one that was executed in this case prior to the appellant giving a statement, serves to waive not only the Fifth Amendment right to counsel but also the Sixth Amendment right to counsel. State v. Hinton, 42 S.W.3d 113, 125 (Tenn. Crim. App. 2000); State v. Terrance Lewis, No. W2003-00356-CCA-R3-CD, 2004 WL 221215, at *8 (Tenn. Crim. App. at Jackson, Jan. 30,

2004).  Accordingly, we conclude that the evidence does not preponderate against the trial court's ruling.

**III.  Conclusion**

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

                        _____

                        NORMA McGEE OGLE, JUDGE