IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 23, 2012

## ALBERT JAMES SAAVEDRA v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Humphreys County**
**No. 11459    Robert E. Burch, Judge**

**No. M2011-00549-CCA-R3-PC - Filed December 6, 2012**

The Petitioner, Albert James Saavedra, was ultimately convicted of voluntary manslaughter and attempted second degree murder and, thereafter, received an effective fourteen-year sentence in the Department of Correction. This court affirmed the Petitioner's convictions and sentence on direct appeal. The Petitioner filed a timely petition for post-conviction relief and, following an evidentiary hearing, the post-conviction court denied relief. On appeal, the Petitioner argues that he received the ineffective assistance of counsel due to trial counsel's (1) allegedly providing the prosecution with information about the location of the Petitioner's vehicle and (2) failing to adequately address issues surrounding the video recording of the Petitioner's statement to authorities. Following our review of the record and the parties' briefs, we conclude that the Petitioner has not shown that he is entitled to relief. The judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Clifford K. McGowan, Jr., Waverly, Tennessee, for the appellant, Albert James Saavedra.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Lisa C. Donegan, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
FACTUAL BACKGROUND

In April 2004, a Humphreys County jury found the Petitioner guilty of voluntary manslaughter and attempted first degree murder. The trial court later reduced the conviction

for attempted first degree murder to attempted second degree murder, finding that the evidence was insufficient to prove that the Petitioner acted with premeditation. See State v. Albert James Saavedra, No. M2004-02889-CC-R3-CD, 2006 WL 618299, at *1 (Tenn. Crim. App. Mar. 13, 2006), perm. app. denied, (Tenn. Aug. 21, 2006). The Petitioner's convictions arose from stabbing Danny DeBerry to death and stabbing Mr. DeBerry's wife, Amanda Joy DeBerry, who came to Mr. DeBerry's aid. A detailed summary of the evidence establishing the November 15, 2002 crimes can be read in this court's opinion on direct appeal. See id. at *1-23. The trial court sentenced the Petitioner to an effective sentence of fourteen years in the Department of Correction. Id. at *1.

This court affirmed the Petitioner's convictions on appeal. Thereafter, our supreme court denied the Petitioner's application for permission to appeal.

The Petitioner then filed a pro se petition for post-conviction relief on August 20, 2007. Counsel was appointed to represent the Petitioner, and an amended petition was filed. The Petitioner argued that he was denied the effective assistance of counsel at trial. Specifically, as relevant to this appeal, he claimed that trial counsel: (1) gave information about his car to the State prior to trial, allowing the State to locate the car to the detriment of the Petitioner; and (2) failed to investigate two video recordings of the Petitioner's statement to Colorado law enforcement officials, which the Petitioner alleged had been altered.[1]

A hearing was held in the post-conviction court, at which only the Petitioner and trial counsel testified. After hearing the evidence presented, the post-conviction court denied relief by written order filed on February 18, 2011. The court attached to the order an extensive "memorandum opinion" explaining the reasons for the denial. This appeal followed.

ANALYSIS

On appeal, the Petitioner contends that trial counsel failed to provide the effective assistance of counsel guaranteed him by the United States and Tennessee constitutions at trial. Specifically, he argues that he received the ineffective assistance of counsel due to trial counsel's (1) allegedly providing the State with information about the location of his car prior to trial and (2) failing to adequately address issues surrounding the video recording of his statement to authorities.

---

[1] The Petitioner raised numerous additional grounds of ineffective assistance in his petitions and during his testimony at the post-conviction hearing. However, he has abandoned his other claims for relief on appeal. We will limit our recount to the relevant facts.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that his conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove his factual allegations supporting the grounds for relief contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See State v. Nichols, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the post-conviction's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance was deficient is not enough; rather, the petitioner must also show that but for counsel's deficient performance, "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has also been applied to the right to counsel under Article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley, 960 S.W.2d at 580. The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." Id. Failure to satisfy either prong results in the denial of relief. Id. at 697.

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. Strickland, 466 U.S. at 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

First, the Petitioner argues that his trial counsel rendered ineffective assistance by providing the State with information on the location of his car prior to trial, which "failure resulted in his conviction." He continues, "[i]n a collateral issue with regard to the location of the vehicle, [trial counsel] failed to elicit proof regarding any damage to the vehicle. This damage would explain the [victim Mr. DeBerry's] injuries to his hand." The State responds that the post-conviction court properly concluded that the Petitioner failed to demonstrate that trial counsel was ineffective for giving the State this information.

At the post-conviction hearing, the Petitioner testified that trial counsel provided the State with information that led to the discovery of his car. According to the Petitioner, the State used the "sales rep." to testify against him at trial. When asked to specify how that testimony prejudiced his trial, the Petitioner responded, "Well, the young lady or the sales rep. that testified during trial made me look as though I was trying to hide something, as far as the vehicle being cleaned or my demeanor at that point in time when the vehicle was traded in."

-4-

Trial counsel responded to this allegation, testifying, "I did not provide or request any type of testing in regard to anything including the vehicle that was not discussed and consented to by my client." Trial counsel said he informed the Petitioner "of the dangers . . . in regard to the vehicle," so that the Petitioner could make an "educated decision": "I wanted to make sure that he understood the forensic work that would be done on that vehicle, the type of evidence they would be looking for[.]" According to trial counsel, the issue was discussed "in depth."

The post-conviction court made the following findings of fact and conclusions of law on the issue:

> Petitioner submits that his trial counsel gave the prosecution information which led to the discovery by the State of the auto dealership in Washington State where Petitioner had sold the 1997 GEO which Petitioner drove during the time the crime was committed. Without this information, he submits, the State would not have discovered this information and would not have been able to use witness Karen Rose to establish that Petitioner traded the 1997 GEO for a 1993 Ford Escort in a[n] even swap. He insists that this testimony established that Petitioner was attempting to get rid of the car used in the crime and that he used a false name.

> When she testified at the trial, witness Karen Rose could not identify Petitioner and identified the man who traded the 1997 GEO as William Overbey. The fact that Petitioner used the name of William Overbey was established by other witnesses who testified for the State.

> Agent William G. Brady III of the Colorado Bureau of Investigation testified at trial that he discovered the purchase agreement for the Ford Escort in Petitioner's car at the time of his arrest. The said purchase agreement contained the name of the dealership in Tacoma, Washington where Petitioner had traded the GEO for the Ford Escort. In his statement to the Jefferson County, Colorado sheriff's detectives, Petitioner himself told the authorities that he traded in his GEO at a used car lot in the State of Washington and that other police officers (Colorado Bureau of Investigation agents) knew where it was traded in. Thus, the State already had the information which Petitioner now complains that his trial counsel was not authorized to give them. Some of the information was given by Petitioner himself.

> At the post-conviction hearing, Petitioner's trial counsel . . . testified that Petitioner insisted upon locating the 1997 GEO for the purpose of having

-5-

it tested. He desired this testing apparently for the purpose of establishing that there was no incriminating evidence in the 1997 GEO. When the investigator for the Public Defender's office failed to locate the car, Petitioner insisted that the information be given to the State so that they might locate the vehicle. Trial counsel testified that he attempted to dissuade Petitioner from this course of action and advised him of the dangers of having the car tested. In fact, at Petitioner's trial, a stipulation was entered into that the GEO had been tested and that no evidence was found.

Petitioner having insisted upon this trial tactic, he cannot now be heard to complain that his choice prejudiced him. In addition, the State already had the information in its possession, some of which Petitioner himself had divulged.

As previously noted, the post-conviction court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the preponderance of the evidence is otherwise. Fields, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The post-conviction court relied heavily on the trial transcript in rendering its decision, and we cannot review those findings of fact and conclusions of law without that transcript. The transcript is not included in the appellate record. The Petitioner has failed to ensure an adequate record for our review, such being his duty. See Tenn. R. App. P. 24(b).

While this court may take judicial notice of an earlier direct appeal record when reviewing the post-conviction court's denial of a petition, see State ex rel. Wilkerson v. Bomar,376 S.W.2d 451, 453 (Tenn. 1964), we determine that it is unnecessary to do so. Trial counsel testified that he advised the Petitioner of the dangers of forensic testing on the vehicle and that the Petitioner made an "educated decision" to have the vehicle located and tested anyway. Trial counsel testified that they discussed the issue "in depth." It was stipulated to at trial that the car was tested for "anything of evidentiary value" and that "no such evidence was found" inside the automobile. See Saavedra, 2006 WL 618299, at *17. The post-conviction court accredited the testimony of trial counsel with regard to this issue, finding that the Petitioner insisted upon this trial tactic and concluding that "he cannot now be heard to complain that his choice prejudiced him." The Petitioner has failed to show he received ineffective assistance due to trial counsel's providing the State with the location of the Petitioner's vehicle.

Regarding the "collateral issue" about damage to Mr. DeBerry's hands, the Petitioner cites to his testimony at the hearing where he testified that he informed trial counsel of the substance of his statement to authorities. According to the Petitioner, in this statement, he

-6-

told the investigating officers that Mr. DeBerry "had punched and hit Joy DeBerry's car." The Petitioner inferred that trial counsel should have asked Mrs. DeBerry about whether Mr. DeBerry had ever hit her car, which testimony would have confirmed his statement.

The Petitioner's argument does not relate to the location of the Petitioner's car but to whether trial counsel adequately cross-examined Mrs. DeBerry about damage to her car. This issue was not raised in either the Petitioner's original petition for post-conviction relief or in his amended petition for post-conviction relief. Nor was it raised during the post-conviction hearing.[2] Therefore, this issue has been waived. See State v. Johnson, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."); Patrick Thurmond v. State, No. M2005-00214-CCA-R3-PC, 2006 WL 680924, at *7 (Tenn. Crim. App. Mar. 15, 2006) ("A post-conviction petitioner may not raise grounds on appeal that were not alleged in the petition for post-conviction relief."), perm. app. denied, (Tenn. Aug. 21, 2006).

As for the videotape issue, the Petitioner testified that he believed someone had tampered with the video recording of his statement to the Colorado authorities. According to the Petitioner, he reviewed the recording prior to the suppression hearing and "knew that it was incomplete." He then asked trial counsel, "where's the rest of it?" The Petitioner asserted that trial counsel did not investigate the matter further as the Petitioner requested. The Petitioner hoped for a mistrial based on the fact that the tape supplied to him was incomplete. Trial counsel did not receive the full tape until trial. The Petitioner believed that Tennessee Bureau of Investigation Agent Derrick Jones had tampered with the tapes. According to the Petitioner, he asked trial counsel to request dismissal of the charges "because of tampering with evidence," but trial counsel refused. The Petitioner opined that there had "been a coverup . . . as far as what happened to the tapes." He testified that someone intentionally deleted from the tapes the part "where [his] Civil Rights were violated" by his repeated requests for an attorney.

Trial counsel testified that he saw "no purpose" in calling Agent Jones to the stand, as it "would have been counter productive to do that." Trial counsel opined that the defense "had accomplished all [it] needed" to do by cross-examining "the actual forensic scientist's work in the crime scene" and that calling Agent Jones would have allowed the State to ask leading questions on cross-examination.

---

[2] Although the Petitioner did testify and claim at the post-conviction hearing that trial counsel failed to effectively cross-examine Mrs. DeBerry, this allegation concerned only Mrs. DeBerry's prior inconsistent statements and pictures of bruises on her body. The Petitioner asserted that this evidence would have supported his claim that the DeBerrys engaged in a physical altercation after he left the scene.

Trial counsel testified that he did investigate "to see what happened" with the tape. Specifically, trial counsel said the following about his investigation of the tape:

> There apparently was part of that through clerical error had not been included in the original tape that we had; but we were afforded an opportunity to review all tapes [be]cause I recall the judge gave us a recess to review tapes and to see if we needed to do anything else based on that; and we did that; and at that time I did not see that we needed to do any further investigation based on the tapes.
>
> My client had a concern that the tapes had been altered - digitally altered. I reviewed the tapes and had staff review the tapes and we saw nothing that would indicate that would happen and I think the technology cost to have done what he believed that they had done to the tapes would have been cost prohibited. It was just not plausible at all that that happened.

Trial counsel and the prosecutor compared their copies of the Petitioner's statement, and they both had the "same tapes[.]" Because their copies were the same, trial counsel "assumed . . . that it was a complete tape." However, the Petitioner "was correct" when he asserted that "parts of the tape were missing[.]"

On cross-examination, trial counsel testified that the tape was "probably beneficial for the jury to see." Specifically, trial counsel asserted that the tape was beneficial for the following reasons:

> [The Petitioner's] statement was very beneficial in that - like a lot of my clients when they give statements they admit to doing something to killing someone or being there by trying to downplay their role; and he was sharp enough that he did not do that. He gave a statement denying his involvement, so it was beneficial.

Trial counsel did not believe the delay in obtaining the "complete tape" was harmful to the defense because, after viewing the tape, he and his staff "didn't see anything that [led them] to believe that [they] needed additional time."

Upon questioning by the post-conviction court, trial counsel clarified the circumstances surrounding editing of the tape:

> The full tape was forwarded from Colorado. It was dubbed in the district attorney's office [in Charlotte] where part was inadvertently left out.

-8-

Then a copy was sent to General Donegan [in Waverly]. She made an exact duplicate of her copy and both of us had a tape that part of it was missing.

When that became clear at trial, we were afforded an opportunity to review the tape and to determine if we needed to file a motion for additional time or seek additional time; and we reviewed that; and based on reviewing that tape and discussions with my client and my staff we decided that we did not need additional time or additional work; and we proceeded.

Trial counsel could not recall what exact portions were left off the tape originally provided to him.

The Petitioner was recalled to the stand and read from the trial transcript. In the portion the Petitioner read, trial counsel stated that the section removed from the tape concerned the Petitioner asking for an attorney "some several numbers of times[.]" According to the transcript as read by the Petitioner, trial counsel said that the omitted section "involved some serious Constitutional issues." The Petitioner opined that the tape was deliberately tampered with by Agent Jones and that he "should have gotten a new trial."

The Petitioner admitted that he viewed the tape with trial counsel during the recess at trial, but he claimed that he "was distracted." He further asserted that trial counsel "sped the tape up and wouldn't let [him] see the rest of the tape."

Trial counsel was recalled. He said that he had "no doubt at all" it was "an accident" that a portion of the tape was omitted. He also believed, "as was claimed[,] that somebody just didn't rewind the tape all the way[.]" Upon examination by the court, trial counsel could not recall the Petitioner's "repeatedly asking for an attorney" on the videotape. He thought the issue was possibly addressed in a pretrial motion. Trial counsel reiterated that the recording allowed the jury to hear the Petitioner's version of events without the Petitioner's having to testify.

The post-conviction court ruled on the issue as follows:

Petitioner alleges that his trial counsel failed to use a transcript of Petitioner's statement to suppress his pre-trial statement in which Petitioner "explicitly requested counsel." He cites the trial transcript . . . and the transcript of the motion to suppress in support thereof.

This [c]ourt has carefully examined . . . the trial transcript and finds nothing to support Petitioner's contention. Perhaps Petitioner is under the

-9-

mistaken belief that, if counsel is requested, the entire statement becomes inadmissible.

The introduction into evidence at trial of Petitioner's statement to agents of the Jefferson County, Colorado Sheriff's Office could best be described as "confused." The videotapes of Petitioner's statement delivered to Petitioner's counsel in response to a discovery request contained a "gap" from 3:09 p.m. until 4:38 p.m., at which time the statement continued. It was during that "gap" that Petitioner requested counsel. The typed transcript of Petitioner's statement was complete, i.e., contained the "gap" material. Apparently, the videotape used by the District Attorney's Office contained the same "gap." During the trial, it was discovered that the DVD prepared from the original tapes contained the "gap" material. . . . After Petitioner and his trial counsel were allowed to view the "gap" material, a stipulation was entered into by which the parties agreed that the jury would only be shown Petitioner's statement contained on the DVD ending at the fifth sentence of page 85 of the typed transcript. Petitioner first requested counsel at page 85 of the typed transcript. Thus, the jury did not view Petitioner's statement past the point that he requested counsel.

If a defendant requests counsel after his arrest pursuant to an arrest warrant, police-initiated interrogation is forbidden. Michigan v. Jackson, 475 U.S. 625, 632 (1986). Any subsequent statement by the defendant as a result of such police-initiated interrogation must be suppressed regardless of whether the defendant executed a Miranda waiver. Id. at 636. (emphasis supplied). This is exactly what was done in Petitioner's trial. Only the part of Petitioner's statement made prior to his request for counsel was admitted into evidence at his trial. The remainder of the statement was preserved for appellate review.

Petitioner has not shown any facts which would have rendered inadmissible that portion of Petitioner's statement which was admitted into evidence. The issue is without merit.

Trial counsel testified that, after discovering that a portion of the tape had been removed, he was given the opportunity to view the tapes, along with the Petitioner, before trial continued. Counsel testified that it was his opinion that the section was omitted inadvertently. Trial counsel did not believe the delay in obtaining the "complete tape" was harmful to the defense because, after viewing the tape, he and his staff "didn't see anything that [led them] to believe that [they] needed additional time." Moreover, trial counsel thought the tape was beneficial to the Petitioner and wanted the information in front of the

jury without having to call the Petitioner to testify. Other than the Petitioner's own assertions, he did not provide any credible evidence that anyone deliberately tampered with the videotape. The Petitioner has failed to show that trial counsel was deficient for failing to investigate the matter further or that the alleged deficiency affected the outcome of his trial in anyway.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE