No. 11-1675 – *State v. William Robert Bevel*

**FILED**

**June 19, 2013**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

LOUGHRY, Justice, dissenting:

I disagree with the majority on two fundamental grounds. First, I think the majority was severely shortsighted in deciding to diverge from the federal approach and hold instead, that law enforcement officers may *never* approach an accused after a request for counsel has been made and thereafter obtain a valid waiver of the right to counsel.[1] Second, I think the majority, by abrogating the effect of valid police-initiated waivers,[2] has wholly disregarded both the critical need to sanction waivers that are properly obtained and the obstructive effect the majority's ruling is likely to have on law enforcement efforts in this state.

The United States Supreme Court made clear in *Montejo v. Louisiana*, 556 U.S. 778 (2009), that states are free to refuse to seek interviews with criminal defendants when

---

[1]*See* U.S. Const. amend. VI; W.Va. Const. art. III, § 14.

[2]The majority took the position that the waiver that the State relied upon in this case "was per se invalid" based on its determination that a waiver can never be obtained as a result of law enforcement's efforts. The majority continues to view accused-initiated waivers as valid. *See* Syl. Pt. 1, *State v. Crouch*, 178 W.Va. 221, 358 S.E.2d 782 (1987) (upholding recanting of request for counsel when accused initiates conversation and applying totality of circumstances test to determine whether accused knowingly and intelligently waived right to counsel).

1

counsel is not present.  *See id.,* 556 U.S. at 793.  In opting to go down that path, however, this Court has overlooked the important role that waivers play in the quotidian operation of law enforcement.  Not only that, but as the high court astutely commented in *Montejo*:  "We suspect the public would be surprised to learn that a criminal can freely sign away his right to a lawyer, confess his crimes, and then ask the courts to *assume* that the confession was coerced–on the ground that he had, at some point earlier in time, made a *pro forma* statement requesting that counsel be appointed on his behalf."  556 U.S. at 793 n.4.

Upon reexamining its holding in *Michigan v. Jackson,* 475 U.S. 625 (1986), *overruled by Montejo*, that a police-initiated interrogation of a defendant following the assertion of his right to counsel at an arraignment or similar proceeding renders a subsequent waiver of the right to counsel invalid, the high court determined in *Montejo* that there were enough protections in place already to protect an individual's right to have counsel during custodial interrogation and to prevent badgering-induced waivers from either occurring in the first instance or secondarily, being immune from challenge upon their occurrence.  475 U.S. at 794-95.  What the high court concluded was that in light of "the *Miranda-Edwards-Minnick* line of cases,"[3] "*Jackson* is simply superfluous."  *Id.* (footnote added).  As the

---

[3]*See Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that any suspect subject to custodial interrogation must be advised of his/her right to have counsel present); *Edwards v. Arizona*, 451 U.S. 477 (1981) (barring instances of self-initiated communications of accused with police, further interrogation is not permitted upon request for counsel); *Minnick*

(continued...)

United States Supreme Court elucidated: "*Miranda* and the cases that elaborate upon it already guarantee not simply noncoercion in the traditional sense, but what Justice Harlan referred to as 'voluntariness with a vengeance.' There is no need to take *Jackson's* further step of requiring voluntariness on stilts." 556 U.S. at 796 (internal citation omitted).

In its haste to separate itself from the federal position, the majority reasoned, without further explanation, that instability would necessarily result in this state's "right-to-counsel jurisprudence" if we opted to follow *Montejo*. Because the constitutional right to counsel itself is not altered as the result of allowing police-initiated waivers of counsel from being upheld, the majority's supposition is premised on a "sky is falling" mentality rather than the reasoned analysis typical of this Court's opinions. Moreover, in stating that the right to counsel guaranteed by our state constitution no longer mirrors the rights accorded by the Sixth Amendment, the majority has proceeded down a path that is likely to create the very uncertainty in the law that it sought to avoid. As a result of the majority's decision to diverge from federal law, each time the United States Supreme Court or the Fourth Circuit issues a ruling that applies the Sixth Amendment right to counsel, a correspondent decision will be required from this Court to determine its applicability to this state.

---

[3](...continued)
*v. Mississippi*, 498 U.S. 146 (1990) (requiring cessation of interrogation until counsel arrives upon request for legal representation).

3

In the process of weighing the "marginal benefits of the *Jackson* rule . . . against its substantial costs to the truth-seeking process and the criminal justice system," the the Court expounded in *Montejo*:

> On the other side of the equation are the costs of adding the bright-line *Jackson* rule on top of *Edwards* and other extant protections. The principal cost of applying any exclusionary rule is, of course, letting guilty and possibly dangerous criminals go free. . . . *Jackson* not only operates to invalidate a confession given by the free choice of suspects who have received proper advice of their *Miranda* rights but waived them nonetheless, but also deters law enforcement officers from even trying to obtain voluntary confessions. *The ready ability to obtain uncoerced confessions is not an evil but an unmitigated good. Without these confessions, crimes go unsolved and criminals unpunished.* These are not negligible costs, and in our view the *Jackson* Court gave them too short shrift.

556 U.S. at 796-97 (internal quotations and citations omitted and emphasis supplied). As the Court recognized in *Montejo*, the societal costs of an across-the-board prohibition on law enforcement-initiated communication with an accused following a request for counsel are simply too high.

Rather than sanctioning improperly obtained waivers that result from police badgering, what the high court did in *Montejo* was to further validate the use of knowing, voluntary, and intelligent waivers of previous requests for counsel. The record in this case demonstrates that just such a waiver was made by Mr. Bevel. After checking the box indicating that he wanted an attorney appointed to represent him during the initial magistrate

4

appearance which occurred sometime between 10 a.m. and noon on December 17, 2010, Mr. Bevel was taken into an interrogation room at approximately 1 p.m. Upon being provided with a one-page form delineating his rights with regard to interrogation,[4] Mr. Bevel signed his name next to the option which indicated that he understood his rights. Sergeant Ross Lockhart testified at the pretrial hearing on Mr. Bevel's motion to suppress his statement that he then read aloud the form entitled "WAIVER OF RIGHTS." The trial court questioned Detective Lockhart as to his reading of the *Miranda* Waiver form to Mr. Bevel:

> Q: Now, on December 17, did you have occasion to read that document to Mr. Bevel?
> A: Yes.
> Q: Okay. You read him the sentences?
> A: Yes, I did.

Continuing the questioning, the trial court inquired about the use of brackets on the form, and Detective Lockhart explained:

> Because when I was speaking to him, I told him, I said, "The first part that I've read to you is you–our rights." Where I had him sign the first time, about three quarters of the way down the page, that was stating that he understood what his rights were, and I continued on the bracket portion, which is the Waiver of Rights. I read him his Waiver of Rights where he waived his right to have counsel present during questioning; asked him if he understood and asked him if he wanted to answer questions. He answered in the affirmative that he did. Therefore, I had him sign that.

---

[4]This form was read aloud to Mr. Bevel after he indicated he had trouble reading.

After hearing the testimony of both Detective Lockhart and Detective Zackary Allman, who testified that Mr. Bevel never asked to end the conversation; never asked to leave the room; never asked to go to the bathroom or requested a drink, the trial court concluded that Mr. Bevel had "willingly, knowingly, and intelligently waive[d] his right to be represented by counsel during the custodial interrogation." The record in this case demonstrates that Mr. Bevel's decision to confess to the police occurred following a freely-given waiver of his right to counsel.

The long-term consequences of allowing a "*pro forma*" request for counsel, once made, to prevent police officers from even trying to obtain confessions are obvious: law enforcement efforts to find, convict, and punish persons who have committed crimes against this state's citizenry will undoubtedly be hampered. As the high Court recognized in *Montejo*, there are multiple protections in place to prevent the police from badgering criminals into waiving their right to counsel. But when an accused individual decides to waive that right of representation, as in Mr. Bevel's case, and confess to the commission of a crime, this Court should not stand in the way of obtaining a lawful conviction.

The tragic end result in this case is that Mr. Bevel's voluntary confession to sexually molesting his two-year-old stepdaughter will not be admissible, and thus, cannot

ever be used against him in any criminal proceeding.[5] This is particularly troubling in that it is highly unlikely that this child will be able to testify against her parental abuser and this brutal and savage act will likely go unpunished. The majority's ruling results in an injustice to this child as well as a monumental step backward for West Virginia's criminal jurisprudence.

For the forgoing reasons, I respectfully dissent. I am authorized to state that Justice Workman joins in this dissent.

---

[5]Mr. Bevel admitted to sexually abusing his stepdaughter by digitally penetrating her vagina while his wife stroked his penis.